ACCEPTED
01-15-00453-cv
FIRST COURT OF APPEALS
HOUSTON, TEXAS
7/20/2015 5:28:02 PM
CHRISTOPHER PRINE
CLERK

NO. 01-15-00453-CV

In The

FIRST COURT OF APPEALS

At Houston, Texas

_____

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

7/20/2015 5:28:02 PM

CHRISTOPHER A. PRINE
Clerk

**THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,**

Appellant,

**V.**

**KEVIN ROBERTS, et al,**

Appellees.

_____

Appealed from the 165th District Court of
Harris County, Texas

_____

**APPELLANT'S BRIEF**

_____

Loren R. Smith
State Bar No. 18643800
Kelly & Smith, P.C.
4305 Yoakum Blvd.
Houston, Texas 77006
Tel.:  (713) 861-9900
Fax:  (713) 861-7100

**ORAL ARGUMENT REQUESTED**

NO. 01-15-00453-CV

THE INSURANCE COMPANY OF THE STATE OF PENNSYVANIA,

Appellant,

V.

KEVIN ROBERTS, et al,

Appellees.

_____

**IDENTITY OF PARTIES & COUNSEL**
_____

1.    The Insurance Company of the State of Pennsylvania – Appellant

2.    Loren R. Smith – Counsel for Appellant
      State Bar No. 18643800
      Kelly & Smith, P.C.
      4305 Yoakum Blvd.
      Houston, Texas  77006
      (713) 861-9900 - Telephone
      (713) 861-7100 - Facsimile
      lsmith@ksmpc.com

3.    Kevin Roberts – Appellee

4.    Jason A. Itkin – Counsel for Kevin Roberts
      State Bar No. 24032461
      Arnold & Itkin
      6009 Memorial Drive
      Houston, Texas 77007
      (713) 222-3800 - Telephone
      (713) 222-3850 – Facsimile

5.    Exxon Mobil Corporation – Appellee

6.    Mike Morris – Counsel for Exxon Mobil Corporation
      State Bar No. 14495800
      Tekell, Book, Allen & Morris, L.L.P.
      1221 McKinney, Suite 4300
      Houston, Texas 77010-2010

(713) 222-9542 - Telephone
(713) 655-7727 – Facsimile

# TABLE OF CONTENTS

IDENTITY OF PARTIES & COUNSEL ...................................................................... ii, iii

TABLE OF CONTENTS ..........................................................................................iv

INDEX OF AUTHORITIES ....................................................................................... v

STATEMENT OF THE CASE ................................................................................. ix

ISSUES PRESENTED FOR REVIEW ..................................................................... x

STATEMENT OF FACTS ........................................................................................ 1

SUMMARY OF THE ARGUMENT ........................................................................ 4

ARGUMENT ............................................................................................................ 6

ISSUE 1:  ................................................................................................................. 6

> The trial court erred in holding that ICSP's worker's compensation subrogation claims were waived, as the waiver of subrogation provisions only apply to liabilities assumed by Savage.  As Savage was not obligated to indemnify Exxon for this accident, the waiver does not apply

ISSUE 2:  ............................................................................................................... 27

> Even if there is an enforceable waiver of subrogation in favor of Exxon, the trial court erred in holding that ICSP's right to assert that Roberts' and Munoz's third-party recovery constituted an advance against future benefits was also waived

ISSUE 3:  ............................................................................................................... 30

> Exxon's affidavit of T. Lynn Henagan cannot be any basis for affirming the trial court's summary judgment

PRAYER FOR RELIEF .......................................................................................... 34

CERTIFICATE OF SERVICE ................................................................................ 34

CERTIFICATE OF COMPLIANCE AND WORD COUNT ........................................... 35

APPENDIX..................................................................................................... 36

## INDEX OF AUTHORITIES

**Cases**

*Am. Risk Funding Ins. Co. v. Lambert,* 59 S.W.3d 254, 259 (Tex. App.—Corpus Christi 2001, pet.denied)......................................................................................... 31

*Approach Operating, LLC v. Resolution Oversight Corp.,* 2012 Tex. App. LEXIS 5437, at 7 (Tex. App. Austin July 3, 2012, no pet).................................................... 8

*Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc*., 256 S.W.3d 660 (Tex. 2008)........ 16

*Aubris Resources LP v. St. Paul Fire & Marine Insurance Co.,* 566 F.3d 483 (5th Cir. 2009) ....................................................................................................... 17

*Capitol Aggregates, Inc. v. Great American Ins. Co.,* 408 S.W.2d 922, 923-24 (Tex. 1966) ...................................................................................................... 27

*Chambers v. Texas Employers Ins. Assoc.,* 693 S.W.2d 648 (Tex. App. 1985, writ ref'd n.r.e.) ...................................................................................................... 30

*Chevron U.S.A. v. Cigna,* No. 09-97-00032-CV, 1998 Tex. App. LEXIS 5043, 1998 WL 472501, at *3-4 (Tex. App.--Beaumont Aug. 13, 1998, pet. denied) .............................. 7

*Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996)................................ 33

*Deepwater Horizon,* 2015 Tex. LEXIS 141 (Tex. 2015)(emphasis added) ...................... 14

*Delaney v. University of Houston*, 835 S.W.2d 56, 58 (Tex. 1992) ................................... 34

*Dresser Indus., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 508 (Tex. 1993) ............. 25

*Employers Casualty Company v. Henager*, 852 S.W.2d 655, 659 (Tex.App.—Dallas 1993, writ den'd)................................................................................................ 27

*Energy Serv. Co. of Bowie, Inc. v. Superior Snubbing Servs.*, 236 S.W.3d 190, 191 (Tex. 2007) ....................................................................................................... 21

*Enserch Corp. v. Parker,* 794 S.W.2d 2, 7 (Tex. 1990) ................................................... 21

**Cases (con't)**

*GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305, 307 (Tex. 2006) ............................................................................................................................... 10

*Hartford Accident & Indem. Co. v. Buckland,* 882 S.W.2d 440, 444–56 (Tex.App.—Dallas 1994, writ denied);.................................................................................... 31

*Home Indemnity Co. v. Pate*, 814 S.W.2d 497 (Tex.App.-Houston[1st Dist.] 1991, no writ)...................................................................................................................... 27

*Houston General Ins. Co. v. Campbell,* 964 S.W.2d 691, 695 (Tex.App.—Corpus Christi 1998, review den'd) ...................................................................................... 28

*Ischy v. Twin City Fire Ins. Co.,* 718 S.W.2d 885, 888 (Tex. App. Austin 1986, writ ref'd n.r.e.) .......................................................................................................... 30

*Jackson v. Land & Offshore Services, Inc.,* 855 F.2d 244 (5th Cir. 1988) ........................ 31

*Kelly v. Red Fox Cos. of New Iberia, Inc.,* 123 Fed. Appx. 595 (5th Cir. 2005).............. 31

*Ken Petroleum Corp. v. Questor Drilling Corp.,* 24 S.W.3d 344, 355 (Tex. 2000) ........... 7

*Ken Petroleum Corp. v. Questor Drilling Corp.*, 976 S.W.2d 283, 290 (Tex. App. Corpus Christi 1998) ............................................................................................... 12

*Ledig v. Duke Energy Corp.,* 193 S.W.3d 167, 178-79 (Tex.App.—Houston[1st Dist.] 2006, no pet.)(citing *Gonzalez v. United Carpenters & Joiners,* 93 S.W.3d 208, 211 (Tex.App.—Houston[14th Dist.] 2002, no pet.))............................................. 34

*Liberty Ins. Corp. v. SM Energy,* 2012 U.S. Dist. LEXIS 174069 (S.D. Tex. Dec. 7, 2012) ...................................................................................................................... 23

*Nicklos Drilling Co. v. Cowart,* 907 F.2d 1552 (5th Cir. 1990) ...................................... 31

*Pasadena Refining System, Inc. v. McCraven,* Nos. 14-10-00837-CV, 14-10-00860-CV, 2012 Tex. App. LEXIS 3823, 2012 WL 1693697 (Tex. App.--Houston [14th Dist.] May 15, 2012, pet. dism'd by agr.*)*.............................................................. 17

*Performance Ins. Co. v. Frans,* 902 S.W.2d 582, 585 (Tex.App.---Houston [1st Dist.] 1995, writ denied) ...................................................................................................... 28

**Cases (con't)**

*Petro-Weld, Inc. v. Luke,* 619 F.2d 418 (5th Cir. 1980) ........................................ 31

*Prewitt and Sampson v. City of Dallas*, 713 S.W.2d 720, 722 (Tex.App.-Dallas 1986, writ ref'd n.r.e.) ........................................................................... 27

*Reliance Ins. Co. v. Hibdon,* 333 S.W.3d 364 (Tex. App.--Houston [14th Dist.] 2011, pet. den'd) ........................................................................... 8

*State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993) (plurality opinion) ........................................................................... 33

*Tesoro Petroleum Corp. v. Nabors Drilling United States*, 106 S.W.3d 118, 133-134 (Tex. App.-Houston[1st Dist.] 2002, writ den'd). ........................................ 20

*Texas Mutual Ins. Co. v. Ledbetter,* 251 S.W.3d 31, 38-39 (Tex. 2008) ........................... 27

*Texas Workers' Compensation Insurance Fund v. Knigh*t, 61 S.W.3rd 91 (Tex.App.—Amarillo 2001, no pet.) ........................................................ 24

*Trahan v. Liberty Mut. Ins. Co.,* 571 Fed. Appx. 319 (5th Cir. Tex. 2014) ........................ 2

*Travelers Insurance Company v. Seidel*, 705 S.W.2d 278, 281 (Tex.App.-San Antonio 1986, writ dism'd) ........................................................ 28

**Statutes**

Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 .................... 30

28 TEX. ADMIN. CODE § 21.202 (West 2015) .................................................. 26

TEX. REV. CIV. STAT. ANN. art. 8306, § 3(d)(Vernon Supp. 1989)(emphasis added) 22

Tex. Rule of Civ. Proc. 166a(c) ............................................................. 2

Tex. Rule of Civ. Proc. 166a(f) ............................................................. 33

Tex. Rule of Civ. Proc. 94 ................................................................... 29

Texas Labor Code Chapter 417 .............................................................. 6

NO. 01-15-00453-CV

THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,

Appellant,

V.

KEVIN ROBERTS, et al,

Appellees.

_____

APPELLANT'S BRIEF

_____

TO THE HONORABLE COURT OF APPEALS OF THE FIRST SUPREME JUDICIAL DISTRICT:

Appellant, The Insurance Company of the State of Pennyslvania ("ICSP"), submits this brief in appeal of the lower court's order and judgment rendered in favor of Appellees, KEVIN ROBERTS ("Roberts") and EXXON MOBIL CORPORATION ("Exxon"). This appeal is from the 165th District Court of Harris County, Texas, Cause No. 2013-03033, Hon. Jeff Shadwick presiding, in which Roberts was the Plaintiff, Exxon was the Defendant and Third-Party Plaintiff, and ICSP was the Third-Party Defendant and Cross-Plaintiff.

## STATEMENT OF THE CASE

Roberts filed suit against Exxon in a case assigned to the 165th District Court of Harris County. The claims were for personal injuries sustained from an explosion and discharge of hot water on January 12, 2013 on premises owned and controlled by Exxon. ICSP was the worker's compensation carrier for Savage. ICSP has paid and continues to pay workers' compensation medical and indemnity benefits to or on behalf of Roberts and Munoz. Around the time it reached a settlement with Roberts, Exxon joined ICSP as a third-party defendant to Roberts' lawsuit, on a declaratory judgment claim. The case was subsequently removed and then remanded by the federal court. Exxon thereafter settled the claims of Munoz. Appellants and Munoz refused to honor the subrogation claims of ICSP, contending ICSP had waived its subrogation rights. ICSP pleaded cross-claims against Appellants for subrogation and conversion, seeking to recover reimbursement of the amount of benefits paid and a credit against future benefits.

ICSP and Appellants filed cross-motions for summary judgment pertaining to the waiver issues. The sitting judge of the 165th District Court, the Hon. Elizabeth Ray, denied Appellants' motion for summary judgment on January 20, 2015. Shortly thereafter, Judge Ray stepped down from the bench. Exxon thereafter filed a motion for reconsideration, which was heard by the sitting judge of the 55th District Court, the Hon. Jeff Shadwick. On April 15, 2015, Judge Shadwick granted the motion for rehearing, and entered a final

summary judgment in favor of Appellants on May 11, 2015, that ICSP take nothing on its

claims for subrogation and for a credit against future benefits.

On May 13, 2015, ICSP timely filed its notice of appeal. ICSP seeks an order from

this Court reversing the trial court's summary judgment that ICSP take nothing on its

subrogation claims, and remanding the case to the trial court for a new trial on ICSP's claims.

## ISSUES PRESENTED FOR REVIEW

**ISSUE 1:**

> The trial court erred in holding that ICSP's worker's compensation subrogation claims were waived, as the waiver of subrogation provisions only apply to liabilities assumed by Savage. As Savage was not obligated to indemnify Exxon for this accident, the waiver does not apply.

**ISSUE 2:**

> Even if there is an enforceable waiver of subrogation in favor of Exxon, the trial court erred in holding that ICSP's right to assert that Roberts' and Munoz's third-party recovery constituted an advance against future benefits was also waived.

**ISSUE 3:**

> Exxon's affidavit of T. Lynn Henagan cannot be any basis for affirming the trial court's summary judgment.

**STATEMENT OF FACTS**

Legend:  "CR" denotes Clerk's Record.

On January 12, 2013, Roberts and Arturo Munoz ("Munoz") were working for Savage Services on a tank in the flexicoker unit of Exxon's Baytown refinery.  (CR.6; CR.79, Exhibit 9 (Appendix "D")) 1  While on the process of working on that tank, there was an explosion which caused a discharge of hot water.  (CR.6)  As a result, Roberts and Munoz sustained severe burns and other personal injuries.  *Id.*  Pursuant to a policy of insurance with Savage, ICSP was called upon to pay workers' compensation medical and indemnity benefits to or on behalf of Roberts and Munoz.  (CR.217; 79, Exhibit 9 (Appedix "D")) As of March 6, 2015, ICSP had paid benefits totaling $115,189.64 on behalf of Roberts, and $571,296.88 on behalf of Munoz, as a result of the accident the subject of this lawsuit. (CR.164, Ex.4 (Appendix "E"))

This lawsuit was filed by Roberts against Exxon on January 16, 2013.  (CR.5)  In March of 2014, Exxon filed a motion for continuance of the March 31, 2014 trial setting and a motion for leave to add ICSP as a third-party defendant.  (CR.27)  Both motions were granted. (CR.32)  On or about March 28, 2014, Exxon reached a settlement with Roberts of his personal injury claims asserted in this lawsuit, in a confidential amount.  (CR.53)  After ICSP filed its answer, Exxon filed a motion for summary judgment against ICSP on its waiver defense, and set it on the Court's submission docket for June 30, 2014.   (CR.86)

---

1 The district clerk failed to include the summary judgment exhibits to the requested documents in the clerk's record.  ICSP is concurrently requesting a supplemental record with these documents.  Relevant omitted portions of the Exhibits are made part of the Appendix.

Exxon filed a counterclaim for indemnity against Roberts pertaining to his indemnity obligations under the settlement agreement, on June 13, 2014. (CR52) ICSP removed the case to federal court on June 13, 2014 based upon diversity jurisdiction. (CR.280) The Hon. Judge Nancy Atlas originally denied remand of a related state court case filed in the 125th District Court by Exxon against ICSP, which had been removed by co-Defendant Starr Indemnity & Liability Insurance Company, one of Exxon's general liability carriers. (CR.87) However, based upon a subsequent ruling by the Fifth Circuit in *Trahan v. Liberty Mut. Ins. Co.,* 571 Fed. Appx. 319 (5th Cir. Tex. 2014), Judge Atlas reconsidered and remanded the Starr Indemnity case, and on the same day remanded this case as well. *Id.* After remand, the case was set for trial on the September 2, 2014 two-week docket, but was not reached. *Id.*

In September 2014, Exxon reached a settlement with Roberts' co-employee, Munoz on his personal injury claims, in a confidential amount. (CR.86.163.180) Munoz was not represented by counsel. (CR.163; CR.165; Exhibit 5, p.12 (Appendix "F")) As part of this settlement, Exxon agreed to indemnify Munoz for any claim by ICSP related to the settlement, and to be responsible for Munoz's future worker's compensation benefits should ICSP receive a statutory credit against future benefits. *Id.*

ICSP filed a motion for partial summary judgment against Appellants on the waiver issue on September 19, 2014. (CR.65) Exxon filed an amended motion for summary judgment against ICSP the waiver defense on September 23, 2014. (CR.77) The motion was a traditional motion for summary judgment on Appellant's affirmative defense of waiver pursuant to Tex. Rule of Civ. Proc. 166a(c), not a no-evidence motion pursuant to Tex. Rule

of Civ. Proc. 166a(i). *Id.* Roberts filed a joinder with Exxon's motion against ICSP on September 24, 2014. (CR.190) The motions were set on the submission docket for October 13, 2014. (CR.83) Exxon also filed a motion to compel the depositions of the organizational representatives of Savage and ICSP. (CR.98)

As admitted by Exxon's counsel in open court in a hearing on October 20, 2014 in the insurance coverage case which was pending in the 125th District Court,2 Exxon accepted responsibility for this accident:

> MR. MORRIS: Yes, your Honor. I think it's important that the Court have a overview. January 12[th] 2013, there is an accident out at the Baytown refinery. A tremendously hot water was dumped on two contractors Kevin Roberts and Arturo Munoz. Now both Mr. Roberts and Mr. Munoz were employees of Savage.
> . . . .
> That accident happens and Mr. Roberts within a few days hires Jason Itkin who files a suit. That suit lands in the 165[th]. It's against ExxonMobil. ExxonMobil believes that it is an additional insurer on policies issued to Savage and makes that claim. ExxonMobil also investigates the accident and determines that it is responsible for the injuries to these men.
>
> Mr. Munoz elects not to hire a lawyer. He represents himself. Mr. Itkin over here aggressively prosecutes the case against ExxonMobil, requests for production, inspections of the area and it is clear that ExxonMobil feels responsible for what happened to these two men.

(CR.165; Exhibit 5, p.11-12 (Appendix "F"))

On February 19, 2015, the Hon. Judge Elizabeth Ray issued an order denying Appellants' motion for summary judgment against ICSP. (CR.158) On February 19, 2015, Judge Ray issued an order denying Exxon's motion to compel the depositions of the

---

2 The coverage case was removed for a second time by Defendant Starr Indemnity & Liability Insurance Company on June 4, 2015.

organization representatives of Savage and ICSP. (CR.160) Judge Ray never ruled on ICSP's motion for partial summary judgment. Shortly thereafter, Judge Ray stepped down from the bench. Exxon thereafter filed a motion for reconsideration, which was heard by the sitting judge of the 55th District Court, the Hon. Jeff Shadwick. (CR.212) On April 15, 2015, Judge Shadwick granted the motion for rehearing, entering a memorandum order and opinion. (CR.241) Judge Shadwick entered a final summary judgment in favor of Appellants on May 11, 2015, that ICSP take nothing on its claims for subrogation and for a credit against future benefits. (CR.268) As reflected in the final summary judgment, Exxon non-suited its cross-claim against Roberts for indemnity without prejudice. (CR.269)

On May 13, 2015, ICSP timely filed its notice of appeal. (CR.270) ICSP seeks an order from this Court reversing the trial court's summary judgment that ICSP take nothing on its subrogation claims, and remanding the case to the trial court for a new trial on ICSP's claims.

## SUMMARY OF THE ARGUMENT

ICSP appeals from the trial court's order granting Appellants' motion for summary judgment, denying its right to recover past benefits paid to Roberts and Munoz, and denying its credit against future benefits.

ICSP's first issue asserts that the trial court erred in holding that ICSP's worker's compensation subrogation claims were waived. The one sentence in the insurance clause requiring a waiver of subrogation expressly limits the waiver to liabilities assumed by Savage. Case law from the Texas Supreme Court and this Court interpreting this limitation

4

look solely to the indemnity clause to determine if the limitation applies. As there is no dispute that Exxon accepted responsibility for this accident and Savage was not obligated to indemnify Exxon for this accident, the waiver does not apply. As Appellants settled without honoring ICSP's subrogation lien, they are liable for the amount of the lien under a cause of action for conversion.

ICSP's second issue asserts that even if there is an enforceable waiver of subrogation in favor of Exxon, the trial court erred in holding that ICSP's right to assert that Roberts' and Munoz's third-party recovery constituted an advance against future benefits was also waived. The Texas Legislature has recognized that a carrier's right of subrogation is distinct from its right to treat a third-party recovery by an injured worker as an advance against future benefits. A finding that a waiver in favor of Exxon also waived ICSP's right to assert a statutory credit against future benefits to Roberts and Munoz would be contrary to the provisions of the waiver endorsement, which provides that the agreement shall not operate directly or indirectly to benefit anyone not named in the Schedule.

In the trial court's memorandum order and opinion, it stated that it was not considering Exxon's summary judgment affidavits, and as such did not need to rule on ICSP's objections. In ICSP's third issue, it asserts that Exxon's affidavit of T. Lynn Henagan cannot be the basis for affirming the trial court's summary judgment. As the trial court expressly did not consider the affidavits, ICSP would submit that they cannot be the basis for affirming the trial court's summary judgment. However, to the extent that ICSP is incorrect, ICSP submits that any consideration of Exxon's affidavit of T. Lynn Henagan over

5

ICSP's objections would have been erroneous, that the trial court erred in not sustaining the objections, and the evidence should not be considered on appeal.

This Court should reverse the trial court's summary judgment, and remand the case to the trial court for a new trial on ICSP's claims.

## ARGUMENT

**ISSUE 1: The trial court erred in holding that ICSP's worker's compensation subrogation claims were waived, as the waiver of subrogation provisions only apply to liabilities assumed by Savage. As Savage was not obligated to indemnify Exxon for this accident, the waiver does not apply.**

### ARGUMENT AND AUTHORITIES FOR ISSUE 1:

Texas Labor Code Chapter 417 provides a worker's compensation carrier a "first money" right of subrogation against any third party which may be liable for a compensable injury. However, Appellants asserted that ICSP has waived its subrogation rights, and refused to honor ICSP's subrogation claim when they settled their claims last year. Additionally, Exxon settled with Munoz, who was unrepresented, also without honoring ICSP's subrogation claim. As part of this settlement, Exxon agreed to indemnify Munoz for any claim by ICSP related to the settlement, and to be responsible for Munoz's future worker's compensation benefits should ICSP receive a statutory credit against future benefits. Although the settlement amounts were confidential, it is undisputed that these settlements were well in excess of the amount of ICSP's subrogation claim. (CR.86.163.180)

6

**A.      Waiver requirements.**

ICSP's insurance policy contains a Blanket Waiver of Subrogation Endorsement, which provides that ICSP shall waive its subrogation rights for limited occurrences.  (CR.78, Exhibit 3, p.8 (Appendix "G"))  In particular, the endorsement provides in part:

> We have the right to recover our payments from anyone liable for an injury covered by this policy.  We will not enforce our right against the person or organization named in the Schedule, but this waiver applies only with respect to bodily injury arising out of the operations described in the Schedule where you are required by a written contract to obtain this waiver from us.
>
> This agreement shall not operate directly or indirectly to benefit anyone not named in the Schedule.
>
> . . . .
>
> (X)      Blanket waiver
> Any person or organization for whom the Named Insured has agreed by written contract to furnish this waiver.

This is standard form WC 42 03 04A, dated January 2000. *Id.*  As noted by the clear language of the endorsement, subrogation is only waived where Savage is required by a written contract to obtain this waiver.

> Both sides agree that in order to have a valid waiver of subrogation, two conditions must be met. First, Lilly must obligate itself to a waiver pursuant to an underlying contract with Approach (here, the MSA), and second, it must obtain a separate endorsement from its insurance carrier waiving those rights. *See, e.g., Chevron U.S.A. v. Cigna,* No. 09-97-00032-CV, 1998 Tex. App. LEXIS 5043, 1998 WL 472501, at *3-4 (Tex. App.--Beaumont Aug. 13, 1998, pet. denied) (not designated for publication) (enforcing waiver of subrogation clause); *see also Ken Petroleum Corp. v. Questor Drilling Corp.,* 24 S.W.3d 344, 355 (Tex. 2000) (noting subrogation waiver in underlying contract and separate endorsement, but holding insurer's claims were outside scope of waiver).

*Approach Operating, LLC v. Resolution Oversight Corp.,* 2012 Tex. App. LEXIS 5437, at 7

(Tex. App. Austin July 3, 2012, no pet).  The waiver in the written contract cannot be inferred,

but must be explicit.

> Approach contends the "express terms of the MSA" similarly required a waiver of subrogation. Unlike the cases discussed above, however, the MSA contains no explicit mention of subrogation. And Approach points to no authority indicating we may infer a waiver of subrogation. **On the contrary, Texas courts require explicit waivers of subrogation and will not read them into contracts.** For example, in *Reliance Ins. Co. v. Hibdon*, the court refused to find a waiver of subrogation in favor of a company's employee when the clause only explicitly mentioned the employer.

*Id*, at 14 (Tex. App. Austin July 3, 2012, no pet)(emphasis added)(citing *Reliance Ins. Co. v.*

*Hibdon,* 333 S.W.3d 364 (Tex. App.--Houston [14th Dist.] 2011, pet. den'd)).  In this case,

Savage was not required to secure a waiver of subrogation under the terms of its agreement

with ExxonMobil; as such, ICSP's subrogation rights were not waived.

**B.      The Exxon contract with Savage does not trigger the blanket waiver endorsement in ICSP's policy.**

Contrary to Appellants' assertions, Exxon's contract with Savage does not require a

waiver of subrogation based upon the facts of this case.  The paragraph cited by Appellants

in support of their waiver contention, section 14(a), provides in relevant part:

> **14. Insurance**
>
> **(a) Coverages.**
>
> . . .
>
> Notwithstanding any provision of an Order to the contrary, [Savage's] liability insurance policy(ies) described above shall: (i) cover [Exxon] as additional insureds in connection with the performance of Services; and (ii) be primary as to all other policies (including any deductibles or self-insured retentions) and self insurance which may provide coverage.  [Savage] and its insurer(s) providing coverage in this

Section shall waive all rights of subrogation and/or contribution against [Exxon] and its Affiliates to the extent liabilities are assumed by [Savage], except [Savage] expressly agrees not to cause itself or its insurer(s) to waive any rights of subrogation and/or contribution against [Exxon] and its Affiliates under any workers' compensation and employers' liability insurance, or similar social insurance in accordance with law which may be applicable to those employees of [Savage], when [Exxon] elects to furnish or arrange same.

(CR.78, Exhibit 1,p.4 (Appendix "H")) The provision of the waiver sentence limiting the waiver "to the extent liabilities are assumed by [Savage]" limits the waiver of subrogation to only those liabilities for which Savage is obligated to indemnify Exxon.

In this case, the indemnity clause in fact obligates Exxon to indemnify Savage for claims arising out of this accident, as the accident arose out of the negligence of Exxon, not Savage:

12. **<u>Third Party Indemnity</u>**. [Exxon] and [Savage] shall indemnify, defend, and hold each other harmless from all claims, demands, and causes of action asserted against the indemnitee by any third party (including, without limitation, [Exxon]'s and [Savage]'s employees) for personal injury, death, or loss of or damage to property resulting from the indemnitor's negligence, Gross Negligence or Willful Misconduct. Where personal injury, death, or loss of or damage to property is the result of joint negligence, Gross Negligence or Willful Misconduct of [Exxon] or [Savage], the indemnitor's duty of indemnification shall be in proportion to its allocable share of such joint negligence, Gross Negligence or Willful Misconduct. If either party is strictly liable under law, the other party's duty of indemnification shall be in the same proportion that its negligence, Gross Negligence or Willful Misconduct contributed to the personal injury, death, or loss of damage to property for which a party is strictly liable. The term "negligence" in these General Terms and Conditions shall include active or passive negligence. "Gross Negligence" is defined by the law governing the Order; however, if such law does not define the term "gross negligence," it means any act or failure to act (whether sole, joint or concurrent) which seriously and substantially deviates from a diligent course of action or which is in reckless disregard of or indifference to the harmful consequences. "Willful Misconduct" is defined by the law governing the Order; however, if such law does not define the term "willful misconduct," it means and intentional disregard of good and prudent standards of performance or of any of the terms of the Order.

9

(CR.78, Exhibit 1,p.4 (Appendix "H")) In particular, Roberts contended in this case that his injuries were caused by the negligence and gross negligence of Exxon, not the negligence of Savage.3 (CR.78, Exhibit 1,p.3) Additionally, as noted above, Exxon has admitted to responsibility for this accident. Exxon has never contended that Savage was in any manner negligent, nor even so much as even moved to designate Savage as a responsible third party, in the course of over a year of litigation with Roberts. (CR.278-284;249-250) ISCP is asserting subrogation for damages sustained by Roberts and Munoz in the accident the subject of this lawsuit. **Exxon assumed the liability for the accident and the damages sustained by Roberts and Munoz, not Savage.** As Savage did not agree in the contract to assume the liabilities for this accident, the waiver of subrogation clause of the contract is not triggered, and ICSP has therefore not agreed to waive its right of subrogation against Exxon.

**C.    The waiver of subrogation endorsement only applies to the liability of Exxon which Savage agreed to assume via the indemnity provision.**

Appellants argue that the provision "to the extent liabilities are assumed by [Savage]" includes the obligation to purchase worker's compensation insurance, and therefore triggers the waiver of subrogation obligation for any insurance Savage is required to secure. Appellants argue that the insurance purchase obligation should fairly be categorized as a "liability" in the context of this paragraph. Essentially, under this logic, the phrase is

---

3 In an analogous context, the eight-corners rule provides that when an insured is sued by a third party, the liability insurer is to determine its duty to defend solely from terms of the policy and the pleadings of the third-party claimant. *See GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305, 307 (Tex. 2006).

redundant, because if Savage assumes the "liability" to secure insurance, it automatically assumes the "liability" to waive subrogation for that insurance.

The Texas Supreme Court has recognized that a clause limiting the waiver provision to liabilities assumed did not waive the carrier's right of subrogation, when the corresponding indemnity clause did not apply. *See Ken Petroleum Co., et al v. Questor Drilling Corp.*, *et al,* 24 S.W.3d 344 (Tex. 2000). In *Ken Petroleum Co.,* the contract between Ken Petroleum and Questor contained mutual indemnification clauses, where the parties were required to indemnify each other for claims by their respective employees. The "Insurance" clause then provided the following waiver clause: **"For liabilities assumed hereunder by contractor [Questor], its insurance shall be endorsed to provide that the underwriters waive their right of subrogation against Operator. Operator [Ken Petroleum] will, as well, cause its insurer to waive subrogation against Contractor for liability it assumes."** *Ken Petroleum Co.,* 24 S.W.3d at 355. The Court of Appeals held the waiver was applicable: "But in this case, KEN's policy provides that Underwriters expressly allowed for such waiver. Appellants' argument that Underwriter's waiver of subrogation was limited only to those situations in which KEN was required to indemnify Questor is without merit." *Ken Petroleum Corp. v. Questor Drilling Corp.*, 976 S.W.2d 283, 290 (Tex. App. Corpus Christi 1998). However, the Texas Supreme Court reversed, finding that the waiver provision did not apply to waive Ken Petroleum's insurance carrier's right of subrogation against Questor for liability payments made to the family of a Questor employee killed on the job site:

11

Questor's contentions are not well-founded. **Ken Petroleum agreed to cause its underwriters to waive their subrogation rights only as to amounts Ken Petroleum might have to pay under its agreement to indemnify Questor.** Ken Petroleum did not agree to indemnify Questor for injuries to or the death of Questor's employees. To the contrary, Questor agreed that it would indemnify Ken Petroleum if a Questor employee were injured or killed. The foregoing provision did not waive the rights of the Underwriters to enforce, as subrogees, the indemnity obligations Questor owed to Ken Petroleum.

Questor next points to an endorsement to Ken Petroleum's policy with the Underwriters entitled "WAIVER OF SUBROGATION WHEN REQUIRED BY CONTRACT" which says:

> It is agreed that, with respect to such insurance as is afforded by this Cover Note, the company waives any right of subrogation against the "principal" named below by reason of any payment made on account of injury, including death resulting therefrom or on account of property damage sustained by any person or entity while the assured is engaged in any of the operations described in the Schedule of this Cover Note.

> "Principal" means any party to whom the named assured is contractually obligated to waive its legal rights of indemnification.

Questor is not a party to the contract of insurance between Ken Petroleum and its Underwriters. Questor must look to its own contract with Ken Petroleum to determine what subrogation rights it may insist that Ken Petroleum require its insurers to waive. Sections 13 and 14.9 of the drilling contract require Ken Petroleum to cause its insurers to waive their subrogation rights only with regard to Ken Petroleum's agreement to indemnify Questor for the death of or injury to Ken Petroleum employees and certain others. The drilling contract does not require Ken Petroleum to cause its insurers to waive subrogation rights when they pay amounts that Questor should have paid under its agreement to indemnify Ken Petroleum. If Ken Petroleum is not contractually obligated to Questor to enforce a waiver of subrogation, Questor cannot insist that Ken Petroleum assert a waiver of subrogation when Ken Petroleum and the Underwriters both agree that the Underwriters stepped into Ken Petroleum's shoes by paying $ 450,000 to settle the Hemphill litigation.

*Ken Petroleum Co.,* 24 S.W.3d at 355-56 (emphasis added). The Court in *Ken Petroleum* recognized that Ken Petroleum had the obligation to secure insurance, yet did not consider this obligation to be one of the "liabilities assumed."

Similarly, the Texas Supreme Court held earlier this year that an insurance obligation dependent on "liabilities assumed" was only triggered if there is an enforceable indemnity agreement. The following is the Court's summary of its holdings:

> As to the first question, we hold that (1) the Transocean insurance policies include language that necessitates consulting the drilling contract to determine BP's status as an "additional insured"; (2) under the terms of the drilling contract, BP's status as an additional insured is inextricably intertwined with limitations on the extent of coverage to be afforded under the Transocean policies; (3) the only reasonable construction of the drilling contract's additional-insured provision is that BP's status as an additional insured **is limited to the liabilities Transocean assumed in the drilling contract**; and (4) BP is not entitled to coverage under the Transocean insurance policies for damages arising from subsurface pollution because BP, not Transocean, assumed liability for such claims. We therefore answer the first certified question in the negative, and based on our analysis of that issue, do not reach the second question.

*In re Deepwater Horizon,* 2015 Tex. LEXIS 141 (Tex. 2015)(emphasis added). The case arose out of "the April 2010 explosion and sinking of the Deepwater Horizon oil-drilling rig, which claimed eleven lives and resulted in subsurface discharge of oil into the Gulf of Mexico at alarming rates for nearly three consecutive months." The Court accepted a certified question from the Fifth Circuit as to whether BP was entitled to coverage for subsurface pollution under an additional insured endorsement of Transocean's insurance policy. The analysis and holding of the Court relevant to this case follows:

> In the Drilling Contract, BP and Transocean agreed to a "knock-for-knock" allocation of risk that is standard in the oil and gas industry. Among other indemnity provisions, **Transocean agreed to indemnify BP for above-surface pollution regardless of fault, and BP agreed to indemnify Transocean for all pollution risk Transocean did not assume, i.e., subsurface pollution**.
>
> Without limiting Transocean's indemnity obligations, the Drilling Contract further required Transocean to carry multiple types of insurance at its own expense. Among the required policies, Transocean was obliged to carry comprehensive general

13

liability insurance, including contractual liability insurance for the indemnity agreement, of at least $10 million. Transocean was also charged with naming BP, its affiliates, officers, employees, and a host of other related individuals and entities:

> as additional insureds in each of [Transocean's] policies, except Workers' Compensation *for liabilities assumed by [Transocean] under the terms of [the Drilling] Contract.* **(Emphasis added.)**

To the extent the terms of the Drilling Contract are incorporated into Transocean's insurance policies, the proper construction of the emphasized portion of the foregoing additional-insured provision becomes central to the resolution of the coverage issue before us.

. . . .

After BP made a demand for coverage, the Insurers sought a declaration that BP would not be entitled to additional-insured coverage for subsurface-pollution claims arising from the Deepwater Horizon incident **because the Drilling Contract limits the additional-insured obligation to "liabilities assumed by [Transocean] under the terms of [the Drilling] Contract."**

. . . .

There is no dispute that (1) BP is an additional insured under the Transocean policies for some purposes, (2) the Drilling Contract is an Insured Contract as defined by the insurance policies, and (3) the Insurers are not parties to the Drilling Contract. The parties, however, join issue regarding whether and to what extent the policies incorporate provisions in the Drilling Contract that may limit BP's status as an additional insured.

. . . .

**In sum, BP contends that its worldwide operations are automatically covered for all "liability imposed by law,"** including subsurface pollution from the Deepwater Horizon incident, because it is undisputed that (1) the Drilling Contract is an "Insured Contract," (2) the Drilling Contract obligates Transocean to provide additional-insured coverage, (3) BP is thereby an "Insured" as that term is specially defined in the insurance policies, and (4) no limitations on the scope of coverage are expressly included in the policies.

. . . .

14

As *Urrutia* demonstrates, an insurance policy may incorporate an external limit on additional-insured coverage. In such cases, the external limit is, in effect, an endorsement to the insurance policy that "suppl[ies] the limits of coverage and extend[s] those benefits to the customer identified therein as accepting the [insured's] offer of insurance." *Id.* at 443. By tying additional-insured coverage to the terms of an underlying agreement, the parties procure only the coverage the insured is contractually obligated to provide, thereby minimizing the insurer's exposure under the policy and the named insured's premiums. *See id.* ("The endorsement . . . allowed [the insured] to determine in the rental contracts themselves which customers would be insured and the amount of their respective coverage.").

. . . .

Applying the only reasonable construction of the additional-insured provision, **we conclude that BP is an additional insured only as to liabilities assumed by Transocean under the Drilling Contract and no others. Because Transocean did not assume liability for subsurface pollution, Transocean was not "obliged" to name BP as an additional insured as to that risk.** Because there is no obligation to provide insurance for that risk, BP lacks status as an "Insured" for the same.

. . . .

Second, BP's argument conflates duty with scope. We have long recognized that the contractual duties to indemnify and to maintain insurance may be separate and independent.n17 Consequently, a statute invalidating an indemnification clause does not relieve a party of a separate duty to obtain insurance. *See Getty,* 845 S.W.2d at 804; see also Tex. Civ. Prac. & Rem. Code § 127.005 (exempting from the Texas Oilfield Anti-Indemnity Act certain indemnity agreements supported by liability insurance furnished by the indemnitor). But simply because the duties to indemnify and maintain insurance may be separate and independent does not prevent them from also being congruent; that is, a contract may reasonably be construed as extending the insured's additional-insured status only to the extent of the risk the insured agreed to assume.

FOOTNOTES

n17 *See ATOFINA*, 256 S.W.3d at 670 ("We disapprove the view that this kind of additional insured requirement fails to establish a separate and independent obligation for insuring liability." (emphasis added)); *Getty Oil Co. v. Ins. Co. of N. Am.,* 845 S.W.2d 794, 804 (Tex. 1992) ("[T]he additional insured provision of the contract does not support the indemnity agreement, but rather is a separate obligation." (emphasis added)).

Such is the case here. The Drilling Contract required Transocean to name BP as an additional insured only for the liability Transocean assumed under the contract. Accordingly, Transocean had separate duties to indemnify and insure BP for certain risk, but the scope of that risk for either indemnity or insurance purposes extends only to above-surface pollution. Article 20.1 of the Drilling Contract, on which BP relies, provides that Transocean's duty to maintain insurance does not alleviate its duty to indemnify BP. This merely confirms our holding in *Getty Oil Co. v. Insurance Co. of North America* that indemnity and insurance clauses can impose separate and independent duties. 845 S.W.2d at 804. Article 20.1 does not provide that the scope of the indemnity and insurance duties are different. Instead, the additional-insured clause confirms they are congruent regarding the risk at issue by requiring Transocean to insure BP **"for liabilities assumed by [Transocean] under the terms of this Contract." Because the scope of Transocean's duty to indemnify governs the scope of Transocean's duty to insure BP, we decline BP's request to ignore the indemnity obligation when construing the Drilling Contract.**

In sum, we answer the first certified question in the negative because BP is not covered for the damages at issue by virtue of the limitations on the scope of its additional-insured status imposed in the Drilling Contract and incorporated into the Transocean insurance policies by reference.

*Id*, at 5 – 40 (emphasis added). The analysis in determining whether an additional insured endorsement is triggered under *Deepwater Horizon* is no different that the analysis in this case as to whether a waiver of subrogation endorsement is triggered in this case. Indeed, Appellants recognize that these endorsements are analogous, arguing in a summary judgment response: "The language at issue in *Pasadena Refining*, while it did apply to additional insured coverage rather than a waiver of subrogation issue, is undeniably similar to the language found in the ICSP Endorsement. Both the ICSP Policy and the *Pasadena Refining* policy provide for either a waiver of subrogation or additional insured coverage when required by contract." (CR.206) As did BP in *Deepwater Horizon*, Appellants rely heavily on the opinions of *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.,* 256 S.W.3d 660

(Tex. 2008), *Aubris* and *Pasadena Refining*.4   Appellants make the similar argument that *ATOFINA, Aubris* and *Pasadena Refining* support their contention that "the insurance requirement which Savage assumed liability for in the Exxon-Savage contract, including liability to secure a workers' compensation insurance policy containing waiver of workers' compensation subrogation rights in favor of Exxon, is separate and independent and not remotely interconnected with any contractual indemnity provisions contained in the ExxonMobil-Savage contract." (CR.197)   The Court in *Deepwater Horizon* distinguished these cases, holding: "But simply because the duties to indemnify and maintain insurance may be separate and independent does not prevent them from also being congruent; that is, a contract may reasonably be construed as extending the insured's additional-insured status only to the extent of the risk the insured agreed to assume." *Deepwater Horizon,* at 39.

Appellants argue: "Here, all the necessary language to determine whether the waiver of subrogation applies is contained in paragraph 14 of the Savage contract.  One does not have to look to the indemnity clause in paragraph 12." (CR.260)   To the contrary, as this case involves damages sustained by a third parties to the contract (Roberts and Munoz), the indemnity clause must necessarily be referenced to determine whether Exxon or Savage assumed liability for those damages. The need to reference the indemnity clause is supported by paragraph 14(b) of the contract, which provides in part: "Supplier's insurance shall apply to

---

4 "In addition to *ATOFINA*, BP relies on *Aubris Resources LP v. St. Paul Fire & Marine Insurance Co.,* 566 F.3d 483 (5th Cir. 2009), and *Pasadena Refining System, Inc. v. McCraven,* Nos. 14-10-00837-CV, 14-10-00860-CV, 2012 Tex. App. LEXIS 3823, 2012 WL 1693697 (Tex. App.--Houston [14th Dist.] May 15, 2012, pet. dism'd by agr.), as supporting a construction of the insurance policies that does not permit consideration of the Drilling

Supplier's indemnity and defense obligations under the Order except, with respect to Services subject to the law of the State of Texas, each party agrees to maintain the insurance and limits as specified in this Section or self insurance during the duration of this Agreement in support of the mutual indemnifications, if any, agreed to in Sections 11, 12, and 13 above." (CR.78; Exhibit 1, p.4 (Appendix "H")) 5  Under Appellants' logic, the Court in *Deepwater Horizon* could have held that Transocean's obligation to secure an additional insured endorsement in favor of BP was a "liability assumed" under the agreement, rendering BP an additional insured irrespective of whether Transocean was required to indemnify BP for a particular risk.  BP in fact argued that it was "automatically covered for all 'liability imposed by law,' . . . because . . .(2) the Drilling Contract obligates Transocean to provide additional-insured coverage. . . ." *Deepwater Horizon,* at 12-13.  This rejected argument mirrors Appellants' argument in this case that the obligation to secure worker's compensation insurance is one of the "liabilities assumed" by Savage.  Quite simply, the Court's holding in *Deepwater Horizon* forecloses Appellants' argument that the waiver of subrogation clause in its contract with Savage is independent of the indemnity clause.

This Court, in following *Ken Petroleum*, has also applied the term "liabilities assumed" solely to the indemnity requirement, holding that while there was a waiver of

---

Contract." *Deepwater Horizon,* at 12.
5 Section 11 is an additional indemnity clause, which covers damages to Savage's tools, equipment and rented items, and damages to Exxon's adjacent property.  Section 13 is an additional indemnity clause for each party's gross negligence and willful misconduct. Notably, Roberts pleaded the accident was the result of the gross negligence of Exxon, a claim for which Exxon agreed to "bear full responsibility" under Section 13.  CR.13,Ex.4,p.3

subrogation for claims which the carrier's insured assumed liability under the indemnity

agreement, there was no waiver for claims for which there was no indemnity requirement.

> In this case, the indemnity agreement between Nabors and Tesoro plainly limits the parties' waiver of subrogation to the liabilities each assumed under the drilling contract. Nabors did not assume liability for losses to its rig caused by Tesoro's gross negligence. Tesoro remained liable for such losses. Nabors, however, recovered its losses from its insurance carrier, Zurich. Therefore, if Nabors were to bring suit against Tesoro to recover for the loss of its rig, it would be seeking a double recovery for the same loss from both Zurich and Tesoro. We hold, therefore, that Zurich, in subrogation to Nabors's rights against Tesoro for gross negligence, is not barred from seeking recovery from Tesoro of the insurance proceeds Zurich paid Nabors.

> We overrule Zurich's issue three to the extent it contends that Zurich has a right of subrogation to those claims against Tesoro as to which Nabors assumed liability under the indemnity agreement in the drilling contract and waived its insurers' subrogation rights. We sustain issue three to the extent it contends that Zurich is not barred from bringing suit against Tesoro in subrogation to Nabors's claims for losses to Nabors's due to Tesoro's gross negligence or willful misconduct, which are beyond the scope of the indemnity agreement.

*Tesoro Petroleum Corp. v. Nabors Drilling United States*, 106 S.W.3d 118, 133-134 (Tex.

App.-Houston[1st Dist.] 2002, writ den'd).6  It is important to note that in *Ken Petroleum*,

the Court held that Ken Petroleum was entitled to subrogate against Questor for its liability

payments and defense costs, even though it had agreed in the contract to secure its own

coverage for its own liability to the injured worker.7  As such, the Court did not apply the

waiver of subrogation to Ken Petroleum's insurance by the mere fact that it had contractually

agreed to secure this coverage.  This is, however, what Appellants have argued – that the

---

6 As noted above, Roberts pleaded gross negligence claims in this lawsuit, as well.  (CR.7)
7 Similarly, in *Tesoro Petroleum*, "Nabors obtained a certificate of insurance listing Zurich as its insurer for damage to Nabor's drilling rig."  *Tesoro Petroleum Corp. v. Nabors Drilling United States,* 106 S.W.3d at 122.  After the blowout, Zurich sought subrogation against Tesoro for the damage to the rig.

mere fact that Savage agreed to secure worker's compensation insurance under the policy constitutes a *per se* agreement to waive subrogation under that policy. Indeed, the very *Pasadena Refining* and *ATOFINA* cases cited by Appellants would suggest that the contractual assumption of liability is separate from the contractual obligation to secure insurance.

Texas Labor Code § 417.004, which is a section of the Chapter which addresses the worker's compensation carrier's subrogation rights, also uses the liabilities assumed language in describing an indemnity obligation. In particular, this section provides:

> Sec. 417.004. EMPLOYER LIABILITY TO THIRD PARTY. In an action for damages brought by an injured employee, a legal beneficiary, or an insurance carrier against a third party liable to pay damages for the injury or death under this chapter that results in a judgment against the third party or a settlement by the third party, the employer is not liable to the third party for reimbursement or damages based on the judgment or settlement unless the employer executed, before the injury or death occurred, a written agreement with the third party to assume the liability.
> Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

The Texas Supreme Court has interpreted the "written agreement with the third party to assume the liability" under Section 417.004 to mean an indemnity agreement. *See Energy Serv. Co. of Bowie, Inc. v. Superior Snubbing Servs.*, 236 S.W.3d 190, 191 (Tex. 2007)("The new Act referred instead to an agreement 'executed . . . with the third party' seeking indemnity."); *Ensearch Corp. v. Parker,* 794 S.W.2d 2, 7 (Tex. 1990)("The Texas Workers' Compensation Act provides that a subscribing employer has no liability to reimburse or hold another person harmless for a judgment or settlement resulting from injury or death of an employee "in the absence of a written agreement expressly assuming such liability." TEX. REV. CIV. STAT. ANN. art. 8306, § 3(d)(Vernon Supp. 1989)(emphasis added). This

provision, commonly referred to as the Texas Workers' Compensation Bar, prohibits indemnity in a workers' compensation context unless one party expressly agrees to indemnify the other in writing."). Under Appellant's logic, if an employer entered into a contract with a third party that it included an obligation to secure worker's compensation insurance for its own employees, the third party could join the employer as a defendant to the lawsuit even in the absence of an indemnity agreement.

In a case from the Southern District of Texas involving the application of a waiver clause to a worker's compensation carrier's subrogation rights, the reviewing court also referenced the contract's indemnity clause in interpreting the scope of the limiting term of the waiver clause "as respects risks and liabilities assumed by Contractor. . . ." In that case, the indemnity clause was so broad that it was clear that the employer was assuming the defendant's liability: "The state-court suit is a claim against St. Mary 'arising out of or related to bodily injury or death' of Select's employees for 'medical, compensation or other benefits.' (Id., ¶ 11.2). Under the unambiguous language of the MSC, Select assumed St. Mary's liability in that suit." *Liberty Ins. Corp. v. SM Energy,* 2012 U.S. Dist. LEXIS 174069 (S.D. Tex. Dec. 7, 2012). However, in this case the indemnity clause in Exxon's contract is not nearly as broad, and does not call for Savage to assume liability for the claims of Roberts and Munoz.

In the memorandum order of April 15, 2015, the trial court provided the following comment: "ISCP's argument only works if Exxon's settlement payments **were for Savage's liability** (the contractual exclusion ICSP focuses upon.) This defies common sense and is

21

not supported by the evidence. Robert's Petition is against Exxon, not Savage. Exxon's settlement with Roberts is in resolution of its own liability, not Savage's." (CR.242)(emphasis added) This comment suggests confusion on the part of the trial court. The parties have never argued that Exxon's settlement payments were for Savage's liability.[8] ICSP agrees that such an argument would defy common sense; however, this is not ICSP's argument. ICSP recognizes, and fact urges that Exxon's settlements with Roberts and Munoz were in resolution of Exxon's own liability. ICSP's argument is that there is no waiver of subrogation unless Savage assumes **Exxon's liability**, via the indemnity clause. It is undisputed that Savage did not agree to indemnify Exxon for this accident. Given that no one has asserted that Savage was liable for the accident, the trial court's comment is puzzling.

An assumed liability is the agreement on the part of one party to pay for damages sustained by another party; it not the agreement to pay insurance premiums prior to the work being performed or any damages ever being sustained. Bootstrapping the insurance purchase requirements to the "assumed liabilities" of the waiver clause would result in a reading that is nonsensical. Under Appellants' interpretation, the clause would be translated as follows: "[Savage] and its insurer(s) providing coverage in this Section shall waive all rights of subrogation and/or contribution against [Exxon] and its Affiliates [for Savage's obligation to secure worker's compensation insurance. . . .]" In other words, Savage is required to waive

---

8 Savage could have never been held liable for the accident, as it had worker's compensation coverage, and therefore was immune from liability to Roberts or Munoz pursuant to Tex. Labor Code § 408.001(also known as the exclusivity provision or worker's compensation

22

subrogation against Exxon for the insurance premiums it is required to pay. However, a worker's compensation carrier can only subrogate for "damages" sustained by an injured employee. *See* Tex. Labor Code § 417.001(a; *Texas Workers' Compensation Insurance Fund v. Knigh*t, 61 S.W.3rd 91 (Tex.App.—Amarillo 2001, no pet.). Insurance premiums required to by paid by an employer are not damages. The Exxon / Savage contract only obligated Savage to pay premiums to an insurance carrier to secure a worker's compensation policy. It did not obligate Savage to pay worker's compensation benefits itself to its own employees. ICSP is not seeking subrogation against Exxon for the insurance premiums paid by Savage. ICSP is seeking subrogation for the insurance benefits it, not Savage, made to Roberts and Munoz, for the damages Roberts and Munoz sustained as a result of the conduct of Exxon. ICSP, not Savage was liable to pay worker's compensation benefits to Roberts. In fact, Texas allows an employer to decline to participate in the worker's compensation system. In that event, however, the employer loses its common law defenses to claims by its own employees; i.e. becomes a "bare employer."

**D.      The indemnity clause is unenforceable as it does not comply with the fair notice doctrine.**

Additionally, Section 12, the indemnity clause, is unenforceable, as it does not comply with the express negligence doctrine by providing that Savage is required to indemnify Exxon for its own negligence, and it does not comply with the conspicuousness requirement as nothing appears on the face of the contract to attract the attention of a reasonable person when he looks at it. *See Dresser Indus., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 508

bar).

(Tex. 1993). By contrast, Section 11 contains a provision complying with the fair notice doctrine: ". . . **EVEN IF THE LOSS OR DAMAGE RESULTS FROM PURCHASER'S NEGLIGENCE.**" (CR.78, Exhibit 1,p.3 (Appendix "H")) As there is no indemnity obligation on the part of Savage, there are no liabilities assumed by Savage, and there is no waiver of subrogation.

**E.     The waiver only applies to general liability coverage.**

Alternatively, the limitation in the Exxon waiver clause, Section 14(a), limiting the waiver "to the extent liabilities are assumed by [Savage]", should be interpreted to limit the waiver only to Savage's general liability insurance coverage, and not its worker's compensation coverage. The worker's compensation policy does not provide coverage for any indemnity obligation assumed by Savage. Worker's compensation coverage only provides for the payment of medical or indemnity benefits to the policyholder's employees, or death benefits to the employees' beneficiaries. Worker's compensation coverage is not third party liability coverage;[9] it is first party insurance coverage.[10] The worker's compensation policy is a three party agreement between the carrier, employer and employee. *Aranda v. Ins. Co. of N. Am.,* 748 S.W.2d 210, 212 (Tex. 1988). General liability insurance may provide coverage to companies other than the policyholder in support of an indemnity obligation. The worker's compensation policy does not provide coverage for any indemnity obligation assumed by Savage, nor can an unaffiliated company such as Exxon be added as an additional insured to

---

[9] *See* 28 TEX. ADMIN. CODE § 21.202 (8) (West 2015("Third-party coverage--Benefits and other rights provided by an insurance contract to any person other than the insured.)
[10] *See* 28 TEX. ADMIN. CODE § 21.202 (5) (West 2015)("First-party coverage--Benefits and

Savage's worker's compensation coverage, as Exxon is not an alternate employer for Savage's employees.

**F.      Appellants are liable for the amount of ICSP's lien as a result of their settlement.**

Both Roberts and Munoz settled their claims against Exxon, without honoring ICSP's subrogation claims.  As part of the Roberts settlement, Roberts agreed to indemnify Exxon for any claim by ICSP related to the settlement.  However, as part of the Munoz settlement, Exxon agreed to indemnify Munoz for any claim by ICSP related to the settlement, and to be responsible for Munoz's future worker's compensation benefits should ICSP receive a statutory credit against future benefits.  Appellants' settlement, and the payment of settlement funds to Roberts and Munoz without reimbursing ICSP's first-money subrogation lien, constitutes conversion.  *See Texas Mutual Ins. Co. v. Ledbetter,* 251 S.W.3d 31, 38-39 (Tex. 2008) ("When an injured worker settles a case without reimbursing a compensation carrier, everyone involved is liable to the carrier for conversion – the plaintiffs, the plaintiffs' attorney, and the defendants.")*; see also Capitol Aggregates, Inc. v. Great American Ins. Co.,* 408 S.W.2d 922, 923-24 (Tex. 1966)("The carrier was held entitled  to recover from the third party and the workman, jointly and severally, the amount of the settlement to the extent necessary to reimburse itself as provided in Section 6a."); *Prewitt and Sampson v. City of Dallas*, 713 S.W.2d 720, 722 (Tex.App.-Dallas 1986, writ ref'd n.r.e.); *Home Indemnity Co. v. Pate*, 814 S.W.2d 497 (Tex.App.-Houston[1st Dist.] 1991, no writ); *Employers Casualty Company v. Henager*, 852 S.W.2d 655, 659 (Tex.App.—Dallas 1993, writ den'd); *Houston*

---

other rights provided by an insurance contract to an insured.")

*General Ins. Co. v. Campbell,* 964 S.W.2d 691, 695 (Tex.App.—Corpus Christi 1998, review den'd) ("If a third-party tortfeasor and its insurer wrongfully pay out to the employee money that belongs to the compensation carrier, the third-party tortfeasor and its insurance company are liable for the total amount paid by the carrier."); *Performance Ins. Co. v. Frans,* 902 S.W.2d 582, 585 (Tex.App.---Houston [1st Dist.] 1995, writ denied); *Travelers Insurance Company v. Seidel*, 705 S.W.2d 278, 281 (Tex.App.-San Antonio 1986, writ dism'd). ICSP pleaded claims against Appellants for conversion, and since subrogation was not waived, ICSP was entitled to recover from Appellants the amount of its lien against the Roberts settlement, and from Exxon in the amount of its lien against the Munoz settlement.

**G.     Conclusion.**

Since waiver is an affirmative defense, it is Appellants' burden to prove it applies as a matter of law.11   Additionally, as Appellants filed a traditional motion for summary judgment, they had the burden to prove as a matter of law that waiver applies.  As Appellants did not prove their affirmative defense of waiver as a matter of law, this Court should reverse the trial court's summary judgment, and remand the case to the trial court for further proceedings.

---

11 *See* Tex. Rule of Civ. Proc. 94; *Dresser Indus., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d

**ISSUE 2: Even if there is an enforceable waiver of subrogation in favor of Exxon, the trial court erred in holding that ICSP's right to assert that Roberts' and Munoz's third-party recovery constituted an advance against future benefits was also waived.**

### ARGUMENT AND AUTHORITIES FOR ISSUE 2:

Even if ICSP's subrogation rights have been waived, this does not waive ICSP's right to assert a credit against future benefits which may be owing to Roberts and Munoz pursuant to Tex. Labor Code § 417.002(b) in the respective amounts of their recovery. Tex. Labor Code § 417.002 provides:

> Sec. 417.002. RECOVERY IN THIRD-PARTY ACTION. (a) The net amount recovered by a claimant in a third-party action shall be used to reimburse the insurance carrier for benefits, including medical benefits, that have been paid for the compensable injury.

> (b) Any amount recovered that exceeds the amount of the reimbursement required under Subsection (a) shall be treated as an advance against future benefits, including medical benefits, that the claimant is entitled to receive under this subtitle.

> (c) If the advance under Subsection (b) is adequate to cover all future benefits, the insurance carrier is not required to resume the payment of benefits. If the advance is insufficient, the insurance carrier shall resume the payment of benefits when the advance is exhausted.

The Legislature has recognized that a carrier's right of subrogation is distinct from its right to treat a third-party recovery by an injured worker as an advance against future benefits (under Tex. Labor Code § 417.002(b)). In particular, Tex. Labor Code § 417.003(d) provides that the worker's attorney can only recover attorney's fees out of the carrier's recovery for amounts paid in the past, not the amount of future benefits the carrier is relieved from paying pursuant to Tex. Labor Code § 417.002(b):

---

505, 508 (Tex. 1993).

(d) For purposes of determining the amount of an attorney's fee under this section, only the amount recovered for benefits, including medical benefits, that have been paid by the insurance carrier may be considered.

Prior to this amendment to the statute in 1993, Texas appellate courts had allowed attorneys to recover attorney's fees from the carrier for not only the past amount of benefits reimbursement, but also the present value of the benefits the carrier was relieved of paying pursuant to the advance provision. *See Ischy v. Twin City Fire Ins. Co.,* 718 S.W.2d 885, 888 (Tex. App. Austin 1986, writ ref'd n.r.e.); *Chambers v. Texas Employers Ins. Assoc.,* 693 S.W.2d 648 (Tex. App. 1985, writ ref'd n.r.e.).

In an analogous context involving a carrier's credit rights for future worker's compensation benefits to be paid under the the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950, the Fifth Circuit has held no fewer than five times that an enforceable waiver of subrogation does not waive the carrier's right to a credit against future benefits. *See Petro-Weld, Inc. v. Luke,* 619 F.2d 418 (5th Cir. 1980); *Petroleum Helicopters, Inc. v. Collier,* 784 F.2d 644 (5th Cir. 1986); *Nicklos Drilling Co. v. Cowart,* 907 F.2d 1552 (5th Cir. 1990); *Jackson v. Land & Offshore Services, Inc.,* 855 F.2d 244 (5th Cir. 1988); *Kelly v. Red Fox Cos. of New Iberia, Inc.,* 123 Fed. Appx. 595 (5th Cir. 2005); *but see Hartford Accident & Indem. Co. v. Buckland,* 882 S.W.2d 440, 444–56 (Tex.App.—Dallas 1994, writ denied); *Am. Risk Funding Ins. Co. v. Lambert,* 59 S.W.3d 254, 259 (Tex. App.—Corpus Christi 2001, pet.denied).12 The right of offset or credit under the Texas Worker's

---

12 The Texas Supreme Court has never addressed this issue. *Lambert* followed *Buckland* without further analysis. *Buckland* based its holding on the *Ischy* and *Chambers* opinions which were subsequently abrogated by statute. *Buckland* also noted that its holding was

Compensation Act for a third party recovery is substantially the same as the right provided under Section 933(f) of the Longshore Act.  The Texas statute dictates that any third-party recovery by a claimant be treated as an "advance" against future benefits, and that until the advance is exhausted, the carrier is not obligated to pay any future benefits.  As it categorizes any third party recovery by the claimant as an advance fund which must first be exhausted, it is similar to "Section 33(f) [, which] fixes the liability of the employer-carrier for compensation in the future after a third party settlement or judgment has been obtained. It simply cannot be read to mean that the employer-carrier is liable to presently pay compensation in addition to the amount received from the third party without first exhausting that fund, and thus provide a double recovery in this case . . . ." *See Petro-Weld, Inc.,* 619 F.2d at 420-421.  There is no rational basis to distinguish these holdings based upon the fact that they involve different statutes.  They both involve worker's compensation statutes that have similar offset or credit provisions in their third-party recovery statutes.  They are similar in that they provide a first money right of reimbursement to the carrier, and are intended to reduce the burden of insurance to the general public.13  Finally, a finding that a waiver in favor of Exxon also waived ICSP's right to assert a statutory credit against future benefits to Roberts and Munoz would be contrary to the provisions of the waiver endorsement, which

---

"governed by former article 8307, section 6a of the Texas Revised Civil Statutes since Buckland's injuries occurred prior to January 1, 1991." *Buckland,* 882 S.W.2d at 441, fn.1.
13 "First-money reimbursement is crucial to the worker's compensation system because it reduces costs for carriers (and thus employers, and thus the public) and prevents double recovery by workers." *Tex. Mut. Ins. Co. v. Ledbetter,* 251 S.W.3d 31, 35 (Tex. 2008).

29

provides that the agreement shall not operate directly or indirectly to benefit anyone not named in the Schedule.

**ISSUE 3: Exxon's affidavit of T. Lynn Henagan cannot be any basis for affirming the trial court's summary judgment.**

### ARGUMENT AND AUTHORITIES FOR ISSUE 3:

ICSP objected to portions of Exxon's affidavit of T. Lynn Henagan (CR.79; Exhibit 8 (Appendix "I")) pursuant to Tex. Rule of Civ. Proc. 166a(f), and provided a proposed order supporting the objections. (CR.87-89) The trial court indicated in its opinion that it was not basing its opinion on the affidavits filed by Appellants: "The parties have agreed that all remaining issues in this case are entirely issues of law. The parties agree, and this Court rules, that the contracts in play are not ambiguous. Accordingly, this Court did not use and does not need to rule on the Affidavits and objections thereto which purport to tell the Court how to interpret the contracts." (CR.241-242)

As the trial court expressly did not consider the affidavits, ICSP would submit that they cannot be the basis for affirming the trial court's summary judgment. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996); *State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993) (plurality opinion); *Delaney v. University of Houston*, 835 S.W.2d 56, 58 (Tex. 1992). However, to the extent that ICSP is incorrect, ICSP submits that any consideration of Exxon's affidavit of T. Lynn Henagan over ICSP's objections would have been erroneous, that the trial court erred in not sustaining the objections, and the evidence should not be considered on appeal. ICSP reurges the objections to the extent the evidence could form the basis of any opinion by this Court, as follows:

30

## A.     General Objections.

Any consideration of paragraphs 6 – 7 and 9 - 11 of Henagan's affidavit , a supervisor for Exxon Risk Management, would have been erroneous as inadmissible parol evidence. "Parol evidence is only admissible to show '(1) the execution of a written agreement was procured by fraud, (2) an agreement was to become effective only upon certain contingencies, or (3) the parties' true intentions if the writing is ambiguous.'" *Ledig v. Duke Energy Corp.,* 193 S.W.3d 167, 178-79 (Tex.App.—Houston[1st Dist.] 2006, no pet.)(citing *Gonzalez v. United Carpenters & Joiners,* 93 S.W.3d 208, 211 (Tex.App.—Houston[14th Dist.] 2002, no pet.)).   Appellants did not argue that Exxon's standard form "Standard Procurement Agreement for Downstream or Chemical Services with Incidental Goods" the basis of their waiver claim was either (1) procured by fraud; (2) effective only upon certain contingencies, or (3) ambiguous.   As such, the parol evidence offered by Henagan is inadmissible.  It was presumably offered as an attempt to broaden the reach of the waiver of subrogation clause.

Additionally, ICSP objected to Henagan's attempts to interpret the contract in paragraphs 6 – 7 and 9 - 11.  The contract speaks for itself.  The interpretation of the contract is a question of law for the Court, not a question of law or fact for Henagan to interpret. Henagan then proceeds to misinterpret the contract.

**B. Specific Objections.**

**1. Paragraph 6.**

In paragraph 6, Henagan states that "Savage assumed liability to maintain workers' compensation and employer's liability insurance. . . ." Henagan's self-serving use of the term "assumed liability" is misplaced; "assumed responsibility" is a more accurate description of the requirement. The act of securing first party worker's compensation insurance covering Savage's own employees (not Exxon's), is not an act of "assuming liability." The only possible reason for Henagan's misuse of this term is to support an argument by Exxon that the act of securing worker's compensation insurance constitutes one of the "liabilities" "assumed by Supplier" under the waiver provision of section 14(a) of Exxon's form contract.

The last two sentences of paragraph 6 of Henagan's affidavit are improper in that they state a legal conclusion as to insurance coverage, and are conclusory, as to the responsibility of Savage's insurance carriers to secure coverage. This is a question of law for the Court, not a question of law or fact for Henagan to interpret. Henagan has not laid any foundation as an attorney to provide a legal conclusion.

**2. Paragraph 7.**

In paragraph 7 of Henagan's affidavit, Henagan states that under section 14(a) of Exxon's form contract "Savage agreed that Savage and its insurers providing coverage under paragraph 14(a) were to waive all rights of subrogation." This states an improper legal conclusion, is conclusory and violates the parol evidence rule. It misstates the waiver clause,

because Savage did not agree to waive "all rights of subrogation"; Savage only agreed to waive subrogation for liabilities assumed by Savage.

### 3. Paragraph 9.

Paragraph 9 attempts to describe Exxon's course and dealing, "practice, and intent," which constitutes inadmissible parol evidence.

### 4. Paragraph 10.

Paragraph 9 attempts to describe Exxon's course and dealing, "practice, and intent," which constitutes inadmissible parol evidence. Additionally, the second sentence, that "the cost of the premiums for such coverage including waiver of subrogation is passed through to ExxonMobil in the pricing and compensation to be paid under the contract" is conclusory, unsupported and without any foundation. The witness, who works in Risk Management, does not lay and foundation for his alleged knowledge of contract and pricing negotiations between Savage and Exxon.

### 5. Paragraph 11.

In paragraph, Henagan provides an impermissible legal conclusion that Savage waived subrogation for this accident. The paragraph is inadmissible as violative of the parol evidence rule, conclusory, unsupported and without any foundation. The witness, who works in Risk Management, does not lay and foundation for his alleged knowledge of contract and pricing negotiations between Savage and Exxon.

## PRAYER FOR RELIEF

WHEREFORE, ICSP prays that this Court reverse the trial court's summary judgment that ICSP take nothing as to its claims pertaining to Roberts, Munoz and Exxon, remand the case to the trial court for a new trial on ICSP's intervention interests; that ICSP recover its taxable costs of Court, and for such other and further relief as just.

Respectfully submitted,

KELLY & SMITH, P.C.

**/s/ _Loren R. Smith_**_____
Loren R. Smith
Texas Bar No. 18643800
4305 Yoakum Blvd.
Houston, Texas 77006
713/861-9900
713/861-7100 - FAX

ATTORNEYS FOR APPELLANT THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2015, a true and correct copy of the foregoing was forwarded by electronic transmission to the following counsel of record:

Jason A. Itkin
Arnold & Itkin
6009 Memorial Drive
Houston, Texas 77007
*Attorneys for Plaintiff Kevin Roberts*

Mike Morris
Tekell, Book, Allen & Morris, L.L.P.
1221 McKinney, Suite 4300
Houston, Texas 77010-2010
*Attorneys for Third-Party Plaintiff Exxon Mobil Corporation*

**/s/ _Loren R. Smith_**_____
Loren R. Smith

34

## CERTIFICATE OF COMPLIANCE AND WORD COUNT

I hereby certify that this document was produced on a computer using Microsoft Word and contains 10,013 words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).

*/s/ **Loren R. Smith***

Loren R. Smith

# APPENDIX

APPENDIX "A":      Trial Court's memorandum order and opinion granting Exxon's
                   Motion for Rehearing, signed April 15, 2015

APPENDIX "B":      Final Summary Judgment, signed May 11, 2015

APPENDIX "C":      Texas Labor Code Chapter 417

APPENDIX "D":      Stipulation of Facts

APPENDIX "E":      Affidavit of Lisa Dean

APPENDIX "F":      Portion of Transcript of October 20, 2014 Hearing in 125th

APPENDIX "G":      Waiver of Subrogation Endorsement from ICSP Policy

APPENDIX "H":      Relevant Portions of Exxon / Savage Contract

APPENDIX "I":      Affidavit of T. Lynn Henagan

CAUSE NO. 2013-03033

| | | |
|---|---|---|
| KEVIN ROBERTS | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| | § | |
| VS | § | HARRIS COUNTY, TEXAS |
| | § | |
| | § | |
| EXXON MOBIL CORPORATION | § | |
| | § | |
| | § | 165TH JUDICIAL DISTRICT |

## ORDER

Upon consideration of The Motion to Abate or in the Alternative Motion for Continuance filed by Exxon Mobil Corporation, Motion for Rehearing of Exxon Mobil Corporation's First Amended Motion for Summary Judgment, and Defendant The Insurance Company of the State of Pennsylvania's Motion for Final Summary Judgment ("ICSP's Motion"), the briefing, summary judgment evidence and argument of counsel, the Court finds as follows:

ICSP's Motion is DENIED.

Exxon's Motion for Rehearing is GRANTED, and further Exxon Mobil Corporation's First Amended Motion for Summary Judgment (filed September 23, 2014) is GRANTED.

Exxon's Motion to Abate or in the Alternative for continuance is MOOT.

The Court's rulings are for the reasons set out in Exxon's motions. The Court comments further as follows:

The parties have agreed that all the remaining issues in this case are entirely questions of law. The parties agree, and the Court rules, that the contracts in play

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

APPENDIX A

4/23/2015 12:33:02 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 5005007
By: HENDERSON, MARCELLA L
Filed: 4/23/2015 12:33:02 PM

NO. 2013-03033

| | | |
|---|---|---|
| KEVIN ROBERTS | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | HARRIS COUNTY, T E X A S |
| | § | |
| EXXON MOBIL CORPORATION | § | 165TH JUDICIAL DISTRICT |

**P2**
**4A**
**( 7 )**

## FINAL JUDGMENT

ON THIS DAY came on to be heard Defendant Exxon Mobil Corporation's Final Summary Judgment against The Insurance Company of the State of Pennsylvania ("ICSP"). The Court, after reviewing the summary judgment record and agreement of counsel, entered an Order on April 15, 2015 granting the First Amended Summary Judgment of Exxon Mobil Corporation against The Insurance Company of the State of Pennsylvania. It is, therefore,

ORDERED, that the Order on Defendant Exxon Mobil Corporation's First Amended Motion for Summary Judgment pursuant to Rule 166(c) of the Texas Rules of Civil Procedure is hereby made final, and the Court consistent with the Summary Judgment hereby enters a declaration that:

a.  The Insurance Company of the State of Pennsylvania waived all contractual and statutory subrogation rights against Exxon Mobil Corporation;

b.  The Insurance Company of the State of Pennsylvania has waived its rights under Tex. Labor Code Chapter 417 to recover from Exxon Mobil Corporation or Plaintiff Kevin Roberts or Arturo Munoz any workers' compensation benefits paid in the past or to claim a credit or set off against compensation benefits to be paid in the future;

c.  The Insurance Company of the State of Pennsylvania is not entitled to reimbursement out of the net amount recovered by Kevin Roberts or Arturo Munoz in any settlement with Exxon Mobil Corporation for past benefits paid pursuant to Tex. Labor Code § 417.002(a); and

d.  The Insurance Company of the State of Pennsylvania is not entitled to a statutory credit or set off against workers' compensation benefits to be paid Kevin Roberts or Arturo Munoz in the future pursuant to Tex. Labor Code § 417.002(b).



RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

APPENDIX B

The Court further notes that Kevin Roberts filed and asserted a claim for attorneys' fees and expenses against ICSP which is hereby non-suited and dismissed without prejudice as moot. Further, ExxonMobil previously filed and asserted a counter-claim for indemnity against Kevin Roberts which is hereby non-suited and dismissed without prejudice as moot. Additionally, Kevin Roberts previously asserted herein his claims against Exxon Mobil Corporation and has stated to the Court that he nonsuits same without prejudice. The Court notes that Kevin Roberts and ExxonMobil approve such non-suits without prejudice as evidenced by their approval of this Final Summary Judgment.

All relief not expressly granted herein as between the parties is hereby denied as this is intended to be a final and appealable judgment.

SIGNED this _____11_____ day of _____May_____, 2015.

_____
PRESIDING JUDGE

**APPROVED AS TO FORM AND SUBSTANCE:**

_____
Mike Morris
Danny Van Winkle
TEKELL, BOOK, ALLEN & MORRIS, L.L.P.
1221 McKinney, Suite 4300
Houston, Texas 77010-2010
(713) 222-9542
(713) 655-7727 - Fax
*Attorneys for Exxon Mobil Corporation*
*in All Capacities*

2

LABOR CODE
CHAPTER 417. THIRD-PARTY LIABILITY

Sec. 417.001. THIRD-PARTY LIABILITY. (a) An employee or legal beneficiary may seek damages from a third party who is or becomes liable to pay damages for an injury or death that is compensable under this subtitle and may also pursue a claim for workers' compensation benefits under this subtitle.

(b) If a benefit is claimed by an injured employee or a legal beneficiary of the employee, the insurance carrier is subrogated to the rights of the injured employee and may enforce the liability of the third party in the name of the injured employee or the legal beneficiary. The insurance carrier's subrogation interest is limited to the amount of the total benefits paid or assumed by the carrier to the employee or the legal beneficiary, less the amount by which the court reduces the judgment based on the percentage of responsibility determined by the trier of fact under Section 33.003, Civil Practice and Remedies Code, attributable to the employer. If the recovery is for an amount greater than the amount of the insurance carrier's subrogation interest, the insurance carrier shall:

(1) reimburse itself and pay the costs from the amount recovered; and
(2) pay the remainder of the amount recovered to the injured employee or the legal beneficiary.

(c) If a claimant receives benefits from the subsequent injury fund, the commission is:
(1) considered to be the insurance carrier under this section for purposes of those benefits;
(2) subrogated to the rights of the claimant; and
(3) entitled to reimbursement in the same manner as the insurance carrier.

**APPENDIX "C"**

(d)   The commission shall remit money recovered under this section to the comptroller for deposit to the credit of the subsequent injury fund.
Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1997, 75th Leg., ch. 1423, Sec. 12.13, eff. Sept. 1, 1997;  Acts 2003, 78th Leg., ch. 204, Sec. 4.09, eff. Sept. 1, 2003.

Sec. 417.002.   RECOVERY IN THIRD-PARTY ACTION.   (a) The net amount recovered by a claimant in a third-party action shall be used to reimburse the insurance carrier for benefits, including medical benefits, that have been paid for the compensable injury.

(b)   Any amount recovered that exceeds the amount of the reimbursement required under Subsection (a) shall be treated as an advance against future benefits, including medical benefits, that the claimant is entitled to receive under this subtitle.

(c)   If the advance under Subsection (b) is adequate to cover all future benefits, the insurance carrier is not required to resume the payment of benefits.  If the advance is insufficient, the insurance carrier shall resume the payment of benefits when the advance is exhausted.
Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Sec. 417.003.   ATTORNEY'S FEE FOR REPRESENTATION OF INSURANCE CARRIER'S INTEREST.   (a)   An insurance carrier whose interest is not actively represented by an attorney in a third-party action shall pay a fee to an attorney representing the claimant in the amount agreed on between the attorney and the insurance carrier.  In the absence of an agreement, the court shall award to the attorney payable out of the insurance carrier's recovery:

(1)   a reasonable fee for recovery of the insurance carrier's interest that may not exceed one-third of the insurance carrier's recovery;  and
(2)   a proportionate share of expenses.

(b)   An attorney who represents the claimant and is also to represent the subrogated insurance carrier shall make a full written disclosure to the claimant before

employment as an attorney by the insurance carrier.  The claimant must acknowledge the disclosure and consent to the representation.  A signed copy of the disclosure shall be furnished to all concerned parties and made a part of the commission file.  A copy of the disclosure with the claimant's consent shall be filed with the claimant's pleading before a judgment is entered and approved by the court.  The claimant's attorney may not receive a fee under this section to which the attorney is otherwise entitled under an agreement with the insurance carrier unless the attorney complies with the requirements of this subsection.

(c)  If an attorney actively representing the insurance carrier's interest actively participates in obtaining a recovery, the court shall award and apportion between the claimant's and the insurance carrier's attorneys a fee payable out of the insurance carrier's subrogation recovery.  In apportioning the award, the court shall consider the benefit accruing to the insurance carrier as a result of each attorney's service.  The total attorney's fees may not exceed one-third of the insurance carrier's recovery.

(d)  For purposes of determining the amount of an attorney's fee under this section, only the amount recovered for benefits, including medical benefits, that have been paid by the insurance carrier may be considered.
Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Sec. 417.004.  EMPLOYER LIABILITY TO THIRD PARTY.  In an action for damages brought by an injured employee, a legal beneficiary, or an insurance carrier against a third party liable to pay damages for the injury or death under this chapter that results in a judgment against the third party or a settlement by the third party, the employer is not liable to the third party for reimbursement or damages based on the judgment or settlement unless the employer executed, before the injury or death occurred, a written agreement with the third party to assume the liability.
Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

## STIPULATION OF FACTS

This stipulation of facts is being entered into between The Insurance Company of the State of Pennsylvania (hereinafter "ICSP") and Exxon Mobil Corporation (hereinafter referred to as "ExxonMobil").

1.    On January 12, 2013, Savage Refinery Services, LLC ("Savage") employees, Kevin Roberts ("Roberts") and Arturo Munoz ("Munoz") sustained bodily injuries in the course and scope of their employment for Savage.

2.    The January 12, 2013 accident in the ExxonMobil Delayed Coker Unit involving Savage employees, Roberts and Munoz, was reported that day to Savage's insurance broker and select underwriters, including Savage's workers' compensation insurance carrier in Texas, The Insurance Company of The State of Pennsylvania ("ICSP").

3.    At the time of the January 12, 2013 accident in the ExxonMobil Delayed Coker Unit, both Roberts and Munoz were performing services for Savage pursuant to the Agreement for Downstream or Chemical Services with Incidental Goods No.: 2088773 (sometimes referenced as A2088773) between ExxonMobil and Savage. (Pertinent parts of Agreement No.: 2088773 including Amendment 6 and 7 and Exhibits A and A-1 redacted to remove references to pricing, are attached as Exhibit 1).

4.    The producer, Marsh USA Risk & Insurance Services, issued the Certificate of Liability Insurance attached as Exhibit 2.

5.    Savage paid an additional premium to add Endorsement WC420304A titled, "Texas Waiver of Our Right to Recover from Others Endorsement" to ICSP Policy No. WC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. Pertinent copies of the workers' compensation and employer liability insurance policy issued by ICSP to Savage redacted to remove references to premium amounts is attached hereto as Exhibit 3.

So stipulated this _____ day of _____, 2014.

_____
By authorized representative of The Insurance
Company of the State of Pennsylvania.

_____  9-22-2014
By Authorized Representative of Exxon Mobil
Corporation

Page 1 of 1

APPENDIX D

CAUSE NO. 2013-03033

| KEVIN ROBERTS | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| VS. | § | 165th JUDICIAL DISTRICT |
| | § | |
| | § | |
| EXXON MOBIL CORPORATION | § | HARRIS COUNTY, TEXAS |

## AFFIDAVIT

| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned authority, personally appeared Lisa Dean who, being by me duly sworn, deposed as follows:

"My name is Lisa Dean. I am of sound mind, over the age of eighteen (18) years, am fully competent to make this Affidavit, and have personal knowledge of the facts herein stated.

I am employed as a Senior Technical Specialist, Workers' Compensation for AIG. In that capacity, I am a duly authorized representative of the third-party defendant, The Insurance Company of the State of Pennsylvania ("ICSOP") as it pertains to the worker's compensation claims involving Kevin Roberts and Arturo Munoz. ICSOP has paid benefits to or on behalf of Mr. Roberts in the total amount of $115,189.64 (all medical) as a result of the accident the subject of this lawsuit. Attached as *Exhibit "A"* to this affidavit is a true and correct copy of ICSOP's payment ledgers for Mr. Roberts' claim, documenting these payments. ICSOP has paid benefits to or on behalf of Mr. Munoz in the total amount of $571,296.88 (medical of $514,205.58 and indemnity of $57,091.30) as a result of the accident the subject of this lawsuit. Attached as *Exhibit "B"* to this affidavit is a true and correct copy of ICSOP's payment ledgers for Mr. Munoz's claim, documenting these payments.

"I am a custodian of records for the attached business records of ICSOP. Attached hereto are twenty-three (23) pages of records from ICSOP regarding the above-referenced claims. These said pages of records are kept by ICSOP in the regular course of business, and it was the regular course of business of ICSOP for an employee or representative of ICSOP with knowledge of the act or event recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original."

APPENDIX E

_____Lisa Dean_____
Name Printed: Lisa Dean


SUBSCRIBED and SWORN TO before me, by _____Lisa S.Giles_____, who is known personally to me, the undersigned Notary Public, on this ___6th___ day of ___March___, 2015, to certify which witness my hand and seal of office.

LISA S. GILES
Notary Public, State of Texas
My Commission Expires
July 29, 2017

_____
Notary Public In and For
The State of ___TX___

AIG/Roberts/Affidavit

in the 165th.

THE COURT: Yes, sir. Thank you very much. Response?

MR. MORRIS: Yes, your Honor. I think it's important that the Court have a overview. January 12th 2013, there is an accident out at the Baytown refinery. A tremendously hot water was dumped on two contractors Kevin Roberts and Arturo Munoz. Now both Mr. Roberts and Mr. Munoz were employees of Savage. Savage was a contractor of ExxonMobil and when they entered into a contract for the work out there, ExxonMobil and Savage sat down and said we want all employees to be covered by worker's compensation insurance but we are going to have an election here. Either Exxon will carry the comp or Savage will carry the comp and they look at the premium charges and in this particular case the parties agreed that Savage would be liable to carry the worker's compensation insurance and that further in that event they would secure a waiver of worker's compensation subrogation rights from the carrier. Just the opposite occurred if Exxon elected to furnish the worker's comp under an older controlled insurance program. In that situation Savage agreed not to secure a waiver of subrogation rights.

So that happens before the accident. That accident happens and Mr. Roberts within a few days hires Jason Itkin who files a suit. That suit lands in the 165th. It's against ExxonMobil. ExxonMobil believes that it is an additional insurer on policies issued to Savage and makes that claim. ExxonMobil also investigates the accident and determines that it is responsible for the injuries to these men.

Mr. Munoz elects not to hire a lawyer. He represents himself. Mr. Itkin over here aggressively prosecutes the case against ExxonMobil, requests for production, inspections of the area and it is clear that ExxonMobil feels responsible for what happened to these two men.

So immediately Itkin, Mr. Itkin, spends a lot of time putting together his expert reports, the medical. ExxonMobil reviews that. We begin to negotiate with our carriers to try to come involved, to try to resolve the case, they refuse to do it to some extent and eventually the *Roberts* case gets concluded. Now during all of this, as the Court knows, the waiver of worker's compensation subrogation is a key to getting the third party cases settled and a decision has to be made who is going to be responsible for that and of course Exxon and, I believe, Mr. Roberts believe that

## TEXAS WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy).

This endorsement, effective 12:01 AM 04/01/2012      forms a part of Policy No. WC . 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

Issued to SAVAGE SERVICES CORPORATION

By THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

This endorsement applies only to the insurance provided by the policy because Texas is shown in item 3.A. of the Information Page.

We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule, but this waiver applies only with respect to bodily injury arising out of the operations described in the Schedule where you are required by a written contract to obtain this waiver from us.

This endorsement shall not operate directly or indirectly to benefit anyone not named in the Schedule.
The premium for this endorsement is shown in the Schedule.

### Schedule

1.  ( )  Specific Waiver

    (X)  Blanket Waiver
        Any person or organization for whom the Named Insured has agreed by written contract to furnish this waiver.

2.  Operations:

3.  Premium:

    The premium charge for this endorsement shall be          percent of the premium developed on payroll in connection with work performed for the above person(s) or organization(s) arising out of the operations described.

4.  Advance Premium:

WC 42 03 04A         Countersigned by _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
(Ed. 01/00)                                               Authorized Representative

APPENDIX G

will pass to Purchaser upon payment therefor by Purchaser or upon delivery to Purchaser's premises or other site designated by Purchaser, whichever occurs earlier.

5. **Taxes.** Supplier shall pay all taxes imposed against Supplier or its property or required to enable Supplier to perform the Order. All taxes, except for applicable state and/or local sales and/or use taxes shall be included in the price of the Services and goods. Any applicable state and/or local sales and/or use taxes due on Services or goods are the duty of Supplier to collect and shall be separately stated on all invoices as such. However, Supplier shall not collect or include any sales and/or use taxes on Services or goods for which Purchaser furnishes a properly completed Exemption Certificate. Supplier shall indemnify and save Purchaser completely harmless against all costs and liabilities that Purchaser may incur with respect to Supplier's failure to make any of the tax payments or take other actions specified in this paragraph.

6. **Suspension and Termination.** Purchaser may suspend or terminate Services, at any time and for any reason, by notice, written or oral, to Supplier, and Supplier shall promptly comply. In the event that Services are suspended or terminated, Purchaser shall pay Supplier only for Services performed and obligations incurred prior to the suspension or termination and for costs that Supplier directly incurs in suspending or terminating the Services, provided Purchaser has authorized such payments in advance. Purchaser may, at any time, authorize Supplier to resume any part of suspended Services by notice to Supplier, and Supplier shall then promptly comply. In no event shall Purchaser be liable for any costs, claims, damages or liabilities whatsoever of Supplier or its subcontractors including, without limitation, consequential, special or indirect damages, loss of anticipated profit or reimbursement, relating to unperformed Services.

7. **Change Orders.** Any alteration, deletion or addition to the Services in, or change in, any provision(s) of an Order shall be effective only if made in a change order or other written instrument signed by Purchaser and Supplier ("Change Order"). A Change Order, however, shall not modify any provisions of the Agreement incorporated into the Order except to the extent that a written Order is permitted to do so in Section 1.C. above.

8. **Purchaser's Premises.** All of Supplier's employees, subcontractors and agents shall comply with Exhibit H, to the extent applicable, and, if entering property owned or controlled by Purchaser ("Work Site") for any purpose, shall observe Purchaser's applicable safety, health, security, and traffic policies and/or regulations, including without limitation Exhibit G, if incorporated, and changes to Exhibit G or such other policies as provided in this Section. Prior to commencing Services on a Work Site, Supplier will inspect the Work Site and ascertain whether any health or safety hazards exist which would require the use of personal protective equipment or specific operating practices in order to provide Supplier's employees, subcontractors, and agents with a safe place to work, and Supplier will ensure that its employees, subcontractors, and agents are aware of any known hazards and that they have and utilize the necessary practices and protective equipment. Purchaser may at any time, in its sole discretion, modify or replace the provisions of Exhibit G, or otherwise furnish or change health and safety requirements, by notification to Supplier either orally or in writing, without complying with any other provision regarding giving notice.

9. **Debris and Trash.** For any Services performed at Purchaser's refinery or chemical plant, Supplier shall accumulate on-site all debris and trash material resulting from Supplier's operations and keep and leave any work sites where Services are performed in a condition satisfactory to Purchaser; Purchaser shall provide instructions for disposition of all debris and trash. For Services performed at any location of Purchaser other than a refinery or chemical plant, Supplier shall at its sole expense remove all inert debris and municipal trash material resulting from Supplier's operations and keep and leave any work sites where Services are performed in a condition satisfactory to Purchaser.

10. **Liens.** Supplier shall ensure that no liens of any kind are fixed upon or against the real or personal property of Purchaser by Supplier's employees, subcontractors, or subcontractor's employees. Supplier shall indemnify, defend, protect and hold Purchaser harmless from all such claims and liens. If requested, Supplier shall furnish Purchaser with full releases (on forms satisfactory to Purchaser) of all claims and liens for labor and materials used in the performance of the Order. In addition to any rights Purchaser may have under the law, Purchaser may withhold a retainage, in an amount set forth in Exhibit D, from each payment it makes to Supplier, to be paid Supplier after (1) the Services are completed as required and the retainage period required by applicable law has expired without issuance of a lien or claim, or (2) Purchaser is satisfied that all claims have been paid and liens removed. In addition, Purchaser may, at any time, require that Supplier post a bond, at no cost to Purchaser, to remove any claims or liens, or Purchaser may discharge or remove any such claims or liens by bonding, payment or otherwise, all of which are chargeable to Supplier, together with all attorney's fees and costs. Provided Purchaser agrees in writing, Supplier may provide an irrevocable standby letter of credit, naming Purchaser as beneficiary and in form and substance satisfactory to Purchaser, in satisfaction of Supplier's obligations and liabilities as aforesaid and in substitution of any retainage.

11. **Responsibility for Property**

(a) **Supplier's Responsibilities.** Supplier shall release and indemnify Purchaser and hold Purchaser harmless for loss of or damage, howsoever caused, to Supplier's or subcontractor's tools and equipment and rented items which are used or intended for use in the Services to be performed, and for any consequential, special or indirect damages, or loss of anticipated profits sustained by Supplier or subcontractors, **EVEN IF THE LOSS OR DAMAGE RESULTS FROM PURCHASER'S NEGLIGENCE.** Supplier shall release and indemnify Purchaser and hold Purchaser harmless for loss of or damage, howsoever caused, to (i) Supplier's, subcontractor's and Purchaser's property intended to be incorporated into the Services and (ii) Purchaser's property intended to be used in the Services, while all such property is in Supplier's care, custody or control until delivered to the Work Site, **EVEN IF THE LOSS OR DAMAGE RESULTS FROM PURCHASER'S NEGLIGENCE.**

Notwithstanding other provisions of this Agreement to the contrary, Supplier shall also be responsible and not compensated by Purchaser for: (1) any loss of money or securities in the care, custody or control of Supplier which are used or intended for use in performing Services, (2) unexplained or mysterious disappearance of any property in Supplier's care, custody or control, or shortage of any property disclosed on taking inventory, or (3) theft of property on the part of Supplier, subcontractors or their employees.

(b) Contractor shall compensate Company for loss of or damage to Company's tools and equipment and rented items at the Work Site which are (i) used or intended for use in the Work to be performed or (ii) incorporated into the Work, which results from the negligence of Contractor.

(c) **Damage to Adjacent Property.** Supplier shall compensate Purchaser for loss of or damage to Purchaser's existing property which is in reasonable proximity to the area of the Work Site where Services are performed which results from the negligence of Supplier and for any resulting consequential, special or indirect damages, or loss of anticipated profits sustained by Purchaser; however, Supplier's responsibility shall not exceed the amount recoverable by Supplier or its subcontractors under the valid and collectible insurance carried by Supplier and subcontractors, or the amount which would have been recoverable under that insurance if all conditions, requirements, and warranties imposed on the insured by the insurer are being or had been met. Purchaser shall release Supplier from liability to Purchaser for such loss or damage and for any resulting consequential, special or indirect damages, or loss of anticipated profits sustained by Purchaser exceeding the amounts so recoverable, **EVEN IF THE LOSS OR DAMAGE RESULTS FROM SUPPLIER'S NEGLIGENCE;** however, Supplier's responsibility shall include the value of any deductible or self-insured retention applicable under that insurance.

APPENDIX H

12. **Third Party Indemnity.** Purchaser and Supplier shall indemnify, defend, and hold each other harmless from all claims, demands, and causes of action asserted against the indemnitee by any third party (including, without limitation, Purchaser's and Supplier's employees) for personal injury, death, or loss of or damage to property resulting from the indemnitor's negligence, Gross Negligence or Willful Misconduct. Where personal injury, death, or loss of or damage to property is the result of joint negligence, Gross Negligence or Willful Misconduct of Purchaser and Supplier, the indemnitor's duty of indemnification shall be in proportion to its allocable share of such joint negligence, Gross Negligence or Willful Misconduct. If either party is strictly liable under law, the other party's duty of indemnification shall be in the same proportion that its negligence, Gross Negligence or Willful Misconduct contributed to the personal injury, death, or loss of or damage to property for which a party is strictly liable. The term "negligence" in these General Terms and Conditions shall include active or passive negligence. "Gross Negligence" is defined by the law governing the Order; however, if such law does not define the term "gross negligence," it means any act or failure to act (whether sole, joint or concurrent) which seriously and substantially deviates from a diligent course of action or which is in reckless disregard of or indifference to the harmful consequences. "Willful Misconduct" is defined by the law governing the Order; however, if such law does not define the term "willful misconduct," it means an intentional disregard of good and prudent standards of performance or of any of the terms of the Order.

13. **Gross Negligence and Willful Misconduct.** Notwithstanding anything to the contrary in this Agreement or an Order, each party shall bear full responsibility, without limit, for its Gross Negligence or Willful Misconduct attributable to its managerial and senior supervisory personnel and, in no event, will a party be required to release or indemnify the other party for Gross Negligence or Willful Misconduct attributable to the other party's managerial or senior supervisory personnel.

14. **Insurance.**

(a) **Coverages.** Supplier shall carry and maintain in force at least the following insurances and amounts: (1) for all its employees engaged in performing Services, workers' compensation and employers' liability insurance or similar social insurance in accordance with applicable law which may be applicable to those employees; (2) its normal and customary Commercial General Liability insurance coverage and policy limits or at least $2,000,000, whichever is greater, providing coverage for injury, death or property damage resulting from each occurrence; and (3) automobile liability insurance covering owned, non-owned, and rented automotive equipment with policy limits of at least $1,000,000 coverage for injury, death or property damage resulting from each accident. (4) If Supplier performs Services in inland waters, endorsements to the workers' compensation policy (i) extending coverage to all employees engaged in performing Services subject to the U.S. Longshoremen's and Harbor Workers' Compensation Act, (ii) stating that a claim made against Purchaser and/or its underwriters by an employee of Supplier based on the doctrine of "borrowed servant" shall, for the purposes of this insurance, be treated as a claim arising under Supplier's policy, and (iii) stating that a claim "In Rem" shall be treated as a claim against the insured. (5) If Supplier performs Services offshore, endorsements (Amendment to Coverage B endorsement - maritime) to the worker's compensation policy (i) extending coverage to include maritime coverage providing limits of at least $1,000,000 per accident, and (ii) extending coverage under the U.S. Longshoremen's and Harbor Worker's Compensation Act to include coverage of the Outer Continental Shelf Lands Act. (6) If watercraft are to be used in performing Services, marine protection and indemnity insurance including coverage for illness or death of seamen providing limits of at least $1,000,000 for each occurrence with Purchaser named as an additional insured party. Notwithstanding any provision of an Order to the contrary, Supplier's liability insurance policy(ies) described above shall: (i) cover Purchaser and Affiliates as additional insureds in connection with the performance of Services; and (ii) be primary as to all other policies (including any deductibles or self-insured retentions) and self insurance which may provide coverage. Supplier and its insurer(s) providing coverage in this Section shall waive all rights of subrogation and/or contribution against Purchaser and its Affiliates to the extent liabilities are assumed by Supplier, except Supplier expressly agrees not to cause itself or its insurer(s) to waive any rights of subrogation and/or contribution against Purchaser and its Affiliates under any workers' compensation and employers' liability insurance, or similar social insurance in accordance with law which may be applicable to those employees of Supplier, when Purchaser elects to furnish or arrange same.

(b) **Other Insurance Requirements.** The above obligations of Supplier and/or its insurers shall apply to Supplier's self-insured retentions and/or deductibles. The minimum insurance requirements as set forth above shall not limit or waive a party's legal or contractual responsibilities to the other party or others. Supplier's insurance shall apply to Supplier's indemnity and defense obligations under the Order except, with respect to Services subject to the law of the State of Texas, each party agrees to maintain the insurance and limits as specified in this Section or self insurance during the duration of this Agreement in support of the mutual indemnifications, if any, agreed to in Sections 11, 12, and 13 above. Supplier shall require any subcontractors to maintain normal and customary insurance, but shall not require subcontractors to carry insurance that would duplicate the coverage of the insurance carried by Supplier or Purchaser or that would insure against liability waived by Purchaser. Upon request by Purchaser, Supplier shall have its insurance carrier(s) furnish to the requester certified copies of the required insurance policies and/or certificates of insurance specifying that no insurance shall be canceled or materially changed while Services are in progress without thirty (30) calendar days prior written notice to the requester. Upon request by Purchaser, Supplier shall have its subcontractors furnish the same evidence of insurance required of Supplier. Supplier and its subcontractors shall not begin Services until all of the insurance required of Supplier and its subcontractors is in force and the necessary documents, if requested by Purchaser, have been received by the requester.

(c) **Purchaser Alternatives.** As an alternative and at Purchaser's option and expense, Purchaser may elect to furnish or to arrange for Supplier all or any part of the insurance required in this Section. If Purchaser elects this alternative, it shall so state in a notice to Supplier, and the Supplier's compensation shall be reduced by an amount equal to the Supplier's cost of the insurance. As an alternative and at Purchaser's option and expense, Purchaser may elect to furnish or to arrange for Supplier the insurance that Supplier carries, or to assume the responsibility, for all or any part of, the property specified in Section 11(b). If Purchaser elects this alternative, it shall so state in a notice to Supplier, and the Supplier's compensation shall be reduced by an appropriate amount.

15. **Insurance and Indemnity Reformation.** If it is judicially or statutorily determined that the insurance required hereunder or the indemnities voluntarily and mutually assumed hereunder exceed the maximum monetary limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law.

16. **Use of Affiliate's Names and Marks.** Supplier shall not use any Affiliate's name, trade name, or trademarks in any advertising or communication to the public, or make publicity releases or announcements concerning the Order, Services, or related activities, in any format, without Purchaser's prior express written consent.

17. **Confidential Information.** Supplier shall hold in confidence all technical and business information made available to Supplier by Purchaser or Affiliates or developed or acquired by Supplier in performance of an Order. Supplier shall not, without Purchaser's prior written approval, use such information for any purpose other than performance of the applicable Order. Purchaser accepts no obligation of confidence with respect to items acquired or information disclosed, no matter how labeled, to Purchaser by Supplier unless specifically provided for in a separate, written confidentiality agreement. In the absence of any confidentiality agreement, Supplier shall not place any restrictive notices on any information, no matter the form of its recording that Supplier provides to Purchaser hereunder. Should Supplier place any notices on any drawing, record or other document, Purchaser is hereby authorized to nullify, obliterate, remove, or disregard those provisions. Supplier shall not take any photographs, videos, or other recordings of Purchaser's or Affiliates' property without Purchaser's prior written consent.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

THE INSURANCE COMPANY OF THE § 
STATE OF PENNSYLVANIA § 
  § 
VS. §   CIVIL ACTION NO. 4:14-cv-00053
  § 
  § 
EXXON MOBIL CORPORATION § 
  § 

**AFFIDAVIT OF T. LYNN HENAGAN**

STATE OF TEXAS § 
  § 
COUNTY OF HARRIS § 

BEFORE ME, the undersigned authority, on this day personally appeared T. Lynn Henagan, known to me to be the person whose name is subscribed hereto, and after being duly sworn, the witness stated on oath as follows:

1. "My name is T. Lynn Henagan. I am over eighteen years of age. I am fully competent to make this affidavit. The factual statements contained herein are within my personal knowledge and are true and correct."

2. "I am currently a supervisor with ExxonMobil Risk Management a division of Exxon Mobil Corporation. I have worked for ExxonMobil Risk Management since 1989."

3. "I was part of an ExxonMobil team assembled to respond to the January 12, 2013 accident in the ExxonMobil Coker Unit in the ExxonMobil Baytown refinery involving Savage Refinery Services, LLC employees, Kevin Roberts and Arturo Munoz."

4. "Among other findings and conclusions, the team's investigation determined that Kevin Roberts and Arturo Munoz were bolting and unbolting flanges on piping to coker drums 3 and 4 in the ExxonMobil Coker Unit, when hot water exited a flange on piping of coker drum 3, causing burn injuries to Kevin Roberts and Arturo Munoz. This work was being performed in the Coker Unit

APPENDIX I

which consists of various piping, drums and vessels which are affixed to the land on which the Refinery sits."

5. "At the time of the accident, both Kevin Roberts and Arturo Munoz were performing services for Savage Refinery Services, LLC (Savage) pursuant to the Agreement for Downstream or Chemical Services with Incidental Goods No. 2088773 (sometimes referenced as A2088773) between ExxonMobil and Savage. (Pertinent parts of Agreement No. 2088773 including Amendment 6 and 7 and Exhibits A and A-1 redacted to remove references to pricing, are attached to my affidavit as Exhibit 1). As noted above, Savage employees, Roberts and Munoz, were performing services on ExxonMobil premises at the time of the accident in question. Savage employees' presence, including that of Roberts and Munoz, on ExxonMobil's premises arose from work and services they performed for Savage in connection with Agreement No. 2088773 ("Savage Contract") between Savage and ExxonMobil."

6. "Pursuant to the Savage Contract No. A2088773 paragraph 14 attached as Exhibit 1, Savage assumed liability to maintain workers' compensation and employer's liability insurance in accordance with applicable law and liability insurance coverages for the benefit of ExxonMobil including Savage's normal and customary commercial general liability insurance coverage and policy limits or at least $2,000,000.00, whichever is greater, providing coverage for injury, death, or property damage resulting from each occurrence. The Savage Contract, attached as Exhibit 1, required that Savage's liability policies cover ExxonMobil as an additional insured in connection with the performance of services. The Savage Contract further required that any additional insured coverage is primary to all other policies (including any deductibles or self-insured retentions) and self-insurance which may provide coverage."

7. "Pursuant to the Savage Contract, attached as Exhibit 1, paragraph 14(a) on page 4, Savage agreed that Savage and its insurers providing coverage under paragraph 14(a) were to waive all rights of subrogation."

8. "As a member of the ExxonMobil Risk Management Department and as part of my responsibilities to the ExxonMobil team assembled to respond to the January 12, 2013 accident, I contacted my counter-parts in the Savage Risk Management Department and requested documentation of the workers' compensation coverage and liability coverages that Savage had assumed liability to provide under the Savage Contract. Savage's Risk Management Department provided a policy of workers' compensation insurance issued by

2

The Insurance Company of the State of Pennsylvania (ICSP) and insuring employees of Savage injured in the course and scope of employment for Savage at the ExxonMobil Baytown Refinery. (Pertinent parts of ICSP's Policy No. WC 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 redacted as to estimated total annual remuneration and estimated annual premiums is attached to my affidavit as Exhibit 2). Savage, through its brokers and agents, also forwarded certificates of liability insurance, copies of which are attached to my affidavit as Exhibit 3."

9.  "As a long time employee of the ExxonMobil Risk Management Department, I have personal knowledge of the workers' compensation insurance, liability insurance, additional insured, and waiver of subrogation requirements contained in the Standard Procurement Agreement for Downstream or Chemical Services with Incidental Goods which ExxonMobil negotiates with its contractors like Savage. ExxonMobil does not specify the manner and method by which a contractor chooses to put its liability insurance program in place, but does contractually require the contractor like Savage to make ExxonMobil an additional insured on the contractor's normal and customary commercial general liability insurance coverage leaving to the contractor like Savage to decide whether to structure that commercial general liability insurance coverage with primary, excess, umbrella, bumbershoot policies together with various deductibles and self-insured retentions that the contractor like Savage would contractually agree to satisfy. ExxonMobil's practice, and intent, is to require contractors like Savage to add ExxonMobil as an additional insured on all of Savage's policies that provide commercial general liability insurance coverage."

10. "ExxonMobil's practice, and intent, is also for all workers, like Kevin Roberts and Arturo Munoz, at the ExxonMobil Baytown refinery to be covered by workers' compensation insurance coverage either by a policy of workers' compensation insurance furnished or arranged by ExxonMobil or a policy of workers' compensation insurance furnished or arranged by the worker's direct employer. When the worker's employer assumes liability to secure and provide workers' compensation insurance coverage, the cost of the premiums for such coverage including waiver of subrogation is passed through to ExxonMobil in the pricing and compensation to be paid under the contract. When ExxonMobil elects to assume liability to furnish and arrange to provide workers' compensation insurance coverage, for workers' like Kevin Roberts and Arturo Munoz, the contract expressly provides that the contractor will not cause itself or its insurers to waive subrogation."

3

11.   "In the present case, Savage agreed to assume liability to provide workers' compensation insurance coverage for its employees, Kevin Roberts and Arturo Munoz, and to secure waiver of workers' compensation subrogation rights in favor of ExxonMobil from its workers' compensation insurance carrier, passing the cost of such workers' compensation insurance coverage and waiver of subrogation rights onto ExxonMobil."

12.   "On or about March 28, 2014, Kevin Roberts entered into a confidential settlement agreement, the consideration for which was not fully tendered by Chartis Europe Limited under Liability Policy No. CU001150B and National Union Fire Insurance Company of Pittsburgh, Pa. under Liability Policy No. GL-972-50-90 until on or about June 4, 2014."

13.   "On August 27, 2014, Arturo Munoz and wife, Candice Reyes, signed a confidential settlement agreement, the consideration for which was not fully funded until September 2, 2014. National Union Fire Insurance Company of Pittsburgh, Pa. (National Union) under Liability Policy No. GL-972-50-90 agreed to contribute, but has not yet paid, 15% of the Arturo Munoz settlement based on the other liability insurance provisions contained in the National Union and Starr Indemnity & Liability Company policies."

14.   "National Union denied coverage to Exxon Mobil Corporation under Liability Policy No. 13273101 based in part on National Union's contention that Starr's Liability Policy No. MASILSE 00005012 must be exhausted before National Union's Policy No. 13273101 is triggered."

"Further, Affiant sayeth not."

T. LYNN HENAGAN

SWORN TO AND SUBSCRIBED BEFORE ME by the said T. LYNN HENAGAN on this the _9th_ day of September, 2014.

VIRGINIA R. GOMEZ
Notary Public, State of Texas
My Commission Expires
November 16, 2017

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

4